SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**In the Matter of the Expungement Application of D.J.B.** (A-39-12) (070973)

**Argued October 7, 2013 -- Decided January 16, 2014**

**RABNER, C.J., writing for a unanimous Court.**

In this appeal, the Court considers whether someone who has been adjudged delinquent as a juvenile can have an adult criminal conviction expunged.

The question turns on the specific language of the expungement statute, N.J.S.A. 2C:52-1 to -32, and the Legislature's intent. Two sections of the expungement law are central to the case: (1) N.J.S.A. 2C:52-2, which allows an adult conviction to be expunged under certain circumstances if a defendant has not been convicted of a prior or subsequent crime; and (2) N.J.S.A. 2C:52-4.1(a), which allows a juvenile adjudication to be expunged.

As a juvenile, D.J.B. was adjudged delinquent for acts that would be considered crimes had they been committed by an adult. As an adult, D.J.B. pleaded guilty to fourth-degree receiving stolen property in 1996. On April 26, 2011, D.J.B. filed a petition seeking to expunge his 1996 criminal conviction. The trial court denied the petition, finding that "[t]he combination of N.J.S.A. 2C:52-4.1(a) and N.J.S.A. 2C:52-2 serve to prevent a petitioner with an indictable crime from obtaining expungement if that petitioner has a prior juvenile record." In an unpublished opinion, the Appellate Division affirmed substantially for the same reasons. The following month, another appellate panel analyzed a similar question and reached the opposite conclusion about the effect a juvenile adjudication has on an attempt to expunge an adult conviction. See In re J.B., 426 N.J. Super. 496 (App. Div. 2012). The Court granted D.J.B.'s petition for certification. 213 N.J. 244 (2013).

**HELD**: Based on its language and legislative history, N.J.S.A. 2C:52-4.1(a) applies only to the expungement of juvenile adjudications and does not transform a juvenile adjudication into a "crime" that would bar a later attempt to expunge an adult conviction under N.J.S.A. 2C:52-2.

1. This case requires the Court to interpret parts of the statutory scheme that allow for the expungement of juvenile and adult records. See N.J.S.A. 2C:52-1 to -32. The chief aim when interpreting a law is to determine and give effect to the Legislature's intent. To do so, courts look first to the plain language of the statute. If the wording of a law is ambiguous, a court may examine extrinsic evidence for guidance, including legislative history. Statutes must also be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole. (p. 8)

2. The "primary objective" of the statutory expungement scheme is to "provid[e] relief to the one-time offender who has led a life of rectitude and disassociated himself with unlawful activity . . . ." N.J.S.A. 2C:52-32. Although records of an arrest, conviction, and related proceedings remain available for certain purposes, the events are otherwise "deemed not to have occurred" if expungement is ordered, N.J.S.A. 2C:52-27. As a result, a successful applicant does not have to reveal information about expunged criminal records when asked. The expungement law also permits defendants to regain various civil privileges like serving on a jury and voting. Expungement, however, is only available to applicants who meet the statutory prerequisites. (pp. 9-10)

3. D.J.B. seeks to expunge his 1996 fourth-degree conviction for receiving stolen property pursuant N.J.S.A. 2C:52-2, which allows an adult conviction to be expunged under certain circumstances if a defendant has not "been convicted of any prior or subsequent crime." The State claims that D.J.B. is ineligible for expungement because his prior juvenile adjudications are considered "prior crimes" pursuant to the last sentence of N.J.S.A. 2C:52-4.1(a), which governs the expungement of juvenile adjudications. The last sentence of N.J.S.A. 2C:52-4.1(a) provides: "For purposes of expungement, any act which resulted in a juvenile being adjudged a delinquent shall be classified as if that act had been committed by an adult." If that sentence applies broadly to other parts of the expungement

1

law, then D.J.B.'s juvenile adjudications would be considered prior crimes, making his 1996 adult conviction ineligible for expungement under section 52-2. If the pivotal sentence applies only to section 52-4.1(a), however, D.J.B.'s adult conviction could still be eligible for expungement. (pp. 10-13)

4. The sentence in question follows three clauses that tell the reader how to determine whether a juvenile adjudication can be expunged. By its placement, the last sentence guides those determinations and appears to apply only to section 52-4.1(a). If read in isolation, though, the sentence is not crystal clear. It does not expressly say that it applies to the expungement statute in its entirety and does not expressly limit its application to section 52-4.1(a). The Court therefore turns to extrinsic sources for further guidance to determine the Legislature's intent. (pp. 13-14)

5. The Legislature enacted a comprehensive expungement scheme in 1979 but did not provide for the expungement of juvenile adjudications. The Legislature amended the expungement statute in 1980 "to allow for the expungement of juvenile delinquency adjudications." S., No. 1266 (Sponsor's Statement), 199th Leg. (N.J. May 5, 1980). Before the 1980 amendment, a prior juvenile adjudication could not stand in the way of an effort to expunge an adult criminal record. Nothing in the legislative history suggests an intent to change that course or that the 1980 amendment was meant to affect the expungement of adult records. The State argues that someone with a juvenile record should be ineligible for expungement because the expungement law's "primary objective" is to "provid[e] relief to the one-time offender." N.J.S.A. 2C:52-32. Because section 32 was part of the original 1979 expungement statute, however, it did not prevent adults with prior juvenile adjudications from expunging a crime when first passed. Nothing in the legislative history of the 1980 amendment changed that. (pp. 14-17)

6. The Code of Juvenile Justice declares that a juvenile who is adjudged delinquent is not "deemed a criminal by reason of such disposition" and that "[n]o disposition [of delinquency] shall operate to impose any of the civil disabilities ordinarily imposed by virtue of a criminal conviction." N.J.S.A. 2A:4A-48. When two statutes address the same subject, courts should make every effort to reconcile them, so as to give effect to both expressions of the lawmaker's will. A broad reading of section 52-4.1(a) would run counter to the principles expressed in the Juvenile Code and impose a clear disability -- a bar to expungement of a crime -- because of a juvenile adjudication alone. A narrower reading, however, allows both statutes to be read together as a unitary and harmonious whole. Finally, a broad reading of section 52-4.1(a) would render parts of the same statute surplusage. N.J.S.A. 2C:52-4.1(b) allows a person to have his delinquency record expunged if, among other things, he "has not been convicted of a crime, or a disorderly or petty disorderly persons offense, or adjudged a delinquent" during the past five years. If the last sentence of section 52-4.1(a) applied to other parts of the expungement law, there would be no need to include the language "adjudged a delinquent" in section 52-4.1(b) because 52-4.1(a) would have classified acts of juvenile delinquency as though they had been committed by an adult. For all of those reasons, the last sentence in section 52-4.1(a) applies only to the expungement of juvenile adjudications. (pp. 17-20)

7. Pursuant to the above analysis, the Court does not consider D.J.B.'s prior juvenile adjudications in reviewing his petition to expunge his adult conviction. Based on the prerequisites for expungement contained in section 52-2, D.J.B is presumptively eligible for expungement. The burden shifts to the State to overcome the presumption and demonstrate why D.J.B. does not qualify for relief under the statute. The State has focused its argument on D.J.B.'s prior adjudications and did not raise other possible impediments to expungement under the statute. Because D.J.B. meets the statutory requirements for expungement and the State has identified no grounds to deny him relief, he is entitled to an order expunging his 1996 fourth-degree conviction for receipt of stolen property. (pp. 20-22)

The judgment of the Appellate Division is **REVERSED**, and the matter is **REMANDED** to the trial court for the entry of an order expunging D.J.B.'s 1996 conviction.

**JUSTICES LaVECCHIA, ALBIN, and PATTERSON and JUDGE CUFF (temporarily assigned) join in CHIEF JUSTICE RABNER's opinion. JUDGE RODRÍGUEZ (temporarily assigned) did not participate.**

IN THE MATTER OF THE
EXPUNGEMENT APPLICATION
OF D.J.B.

Argued October 7, 2013 – Decided January 16, 2014

On certification to the Superior Court,
Appellate Division.

Randolph H. Wolf argued the cause for
appellant D.J.B. (Mr. Wolf, attorney; Mr.
Wolf and Katherine A. North, on the brief).

Anthony J. Parenti, Jr., Assistant
Prosecutor, argued the cause for respondent
State of New Jersey (Geoffrey D. Soriano,
Somerset County Prosecutor, attorney; Mr.
Parenti and Cameron W. MacLeod, Legal
Assistant, on the letter briefs).

Analisa Sama Holmes, Deputy Attorney
General, argued the matter on behalf of
amicus curiae Attorney General of New Jersey
(John J. Hoffman, Acting Attorney General,
attorney).

D.J.B. submitted briefs pro se.

CHIEF JUSTICE RABNER delivered the opinion of the Court.

In this case, we consider whether someone who has been adjudged delinquent as a juvenile –– for acts that would be considered crimes had they been committed by an adult –– can have an adult criminal conviction expunged. The question turns

on the specific language of the expungement statute, N.J.S.A. 2C:52-1 to -32, and the Legislature's intent.

Two sections of the expungement law are central to the case: (1) N.J.S.A. 2C:52-2, which allows an adult conviction to be expunged under certain circumstances if a defendant has not been convicted of a prior or subsequent crime; and (2) N.J.S.A. 2C:52-4.1(a), which allows a juvenile adjudication to be expunged. The Legislature added the latter section in 1980 to create a pathway for the expungement of juvenile adjudications. The section ends with the following language: "[f]or purposes of expungement, any act which resulted in a juvenile being adjudged a delinquent shall be classified as if that act had been committed by an adult."

The parties debate the meaning of that sentence -- specifically, whether it transforms juvenile adjudications into "crimes" that would bar a later attempt to expunge an adult conviction. Based on the language of the statute and its legislative history, we conclude that section 52-4.1(a) applies only to the expungement of juvenile adjudications. There is no evidence that, when the Legislature amended the law in 1980 to address juvenile adjudications, it meant to tighten the rules for expunging adult convictions. As a result, an adult who is otherwise eligible for expungement of a crime is not disqualified because of a prior juvenile adjudication. We

2

therefore reverse the judgment of the Appellate Division, which affirmed the trial court's order denying expungement.

                                I.

D.J.B. is thirty-six years old. He is married, has three children, and has worked in the insurance industry for many years. He plans to start his own insurance brokerage firm and claims that a 1996 fourth-degree conviction for receiving stolen property has impeded his efforts to advance his career. He now seeks to expunge that adult conviction.

As a juvenile, D.J.B. was adjudged delinquent on several occasions for offenses that spanned an eleven-month period in 1993 and 1994. At age sixteen, in two separate matters in November 1993 and March 1994, he was adjudged delinquent under N.J.S.A. 2A:4A-23 of charges that, if committed by an adult, would amount to third-degree burglary. In each matter, the court sentenced D.J.B. to one year of probation, among other terms.

At age seventeen, in April 1994, D.J.B. was charged in a series of four complaints. Three complaints alleged behavior that, if committed by an adult, would amount to third-degree burglary; two of those complaints also charged the equivalent of third-degree theft. A separate, fourth complaint contained twelve charges that, if committed by an adult, would constitute third-degree burglary, third-degree theft, third-degree

possession of an imitation controlled dangerous substance, fourth-degree possession of marijuana with intent to distribute, third-degree possession of marijuana with intent to distribute within 1000 feet of school property, third-degree credit card fraud, and several disorderly persons offenses. The court consolidated the complaints and adjudged D.J.B. delinquent in January 1995. D.J.B. was ultimately sentenced to one year of detention, one year of probation, and one year's loss of his driver's license, among other terms.[1]

D.J.B. also has a more limited adult record. In November 1995, at age eighteen, he was charged with third-degree receipt of stolen property. He pleaded guilty months later, in June 1996, to an amended fourth-degree offense contrary to N.J.S.A. 2C:20-7a. The court sentenced him to three years of probation, community service, restitution in the amount of $21.20, as well as various fines and fees. He completed probation in August 1999.

Finally, in September 1999, at age twenty-two, D.J.B. pleaded guilty to two counts of contempt, N.J.S.A. 2C:29-9, a disorderly persons offense. He represents that the charges stemmed from a dispute with his then-girlfriend, to whom he is

---

[1] The State's brief also refers to a juvenile adjudication in September 1994, but the record does not contain materials about such a matter. If there was an additional juvenile adjudication in 1994, the analysis that follows would be the same.

4

now married.  The court sentenced D.J.B. to one year of probation, which he completed in September 2000.  D.J.B.'s record has no other offenses.

On April 26, 2011, D.J.B. filed a petition for expungement that listed the above convictions and juvenile adjudications.  D.J.B. represented himself and used a form that the Administrative Office of the Courts makes available to litigants.  See N.J. Admin. Office of the Courts, How to Expunge Your Criminal and/or Juvenile Record (Apr. 2009), http://www.judiciary.state.nj.us/prose/10557_expunge_kit.pdf.

For purposes of this appeal, D.J.B. seeks to expunge only his 1996 criminal conviction for receiving stolen property.  As noted above, he claims that the conviction has limited his ability to advance professionally.  He also asserts that it prevents him from coaching baseball in the town's youth league.

After a hearing before the trial court, at which D.J.B. was represented by an attorney, the judge ordered that D.J.B.'s juvenile record be expunged but denied the petition to expunge his adult conviction and disorderly persons offenses.  In an unpublished opinion, the trial court explained that "[t]he combination of N.J.S.A. 2C:52-4.1(a) and N.J.S.A. 2C:52-2 serve to prevent a petitioner with an indictable crime from obtaining expungement if that petitioner has a prior juvenile record."

5

D.J.B.'s prior juvenile adjudications, the trial court found, therefore barred expungement of his adult conviction.

D.J.B. appealed, representing himself once again, and successfully moved for a stay of the trial court's order pending appeal.  In an unpublished opinion, the Appellate Division affirmed substantially for the reasons set forth by the trial court.

The following month, another appellate panel analyzed a similar question under the expungement statute.  See In re J.B., 426 N.J. Super. 496 (App. Div. 2012).  The second panel reached the opposite conclusion about the effect a juvenile adjudication has on an attempt to expunge an adult conviction.  Id. at 508-09.  The panel held that the last sentence of section 52-4.1(a) applies only to expungements of juvenile adjudications.  Ibid.

We granted D.J.B.'s petition for certification.  213 N.J. 244 (2013).  We also granted the Attorney General's motion to participate as amicus curiae.

## II.

D.J.B. submitted a letter brief on his own behalf and a supplemental brief through counsel.  He argues that his 1996 adult conviction should be expunged.  He maintains that the language in section 52-4.1(a) -- "[f]or purposes of expungement, any act which resulted in a juvenile being adjudged a delinquent shall be classified as if that act had been committed by an

6

adult" -- which the trial court and appellate panel relied on, applies only to the way juvenile adjudications are evaluated for expungement. As a result, he claims that a juvenile adjudication is not considered a "prior crime," within the meaning of section 52-2, and does not bar the expungement of an adult criminal conviction.

D.J.B. relies heavily on the reasoning in J.B. He argues that when the Legislature drafted section 52-4.1(a), it focused on the expungement of juvenile records and did not intend to make it more difficult to expunge adult convictions.

The State maintains that the plain language of section 52-4.1(a) prevents expungement of D.J.B.'s adult conviction. Because the State believes that the key language also applies to section 52-2, it contends that D.J.B.'s prior juvenile adjudications are considered "prior crimes" that preclude expungement of his adult record. Although the State argues that it is not necessary to look beyond the plain language of the statute, it submits that the legislative history supports its position. The State also asserts that D.J.B. is not the one-time offender for whom the expungement statute is designed.

The Attorney General largely agrees with the State's position. He argues that juvenile adjudications should be counted when considering a petition to expunge an adult offense

in light of the statute's plain language, the framework of the entire law, and the act's legislative history.

III.

A.

This case requires the Court to interpret parts of the statutory scheme that allow for the expungement of juvenile and adult records. See N.J.S.A. 2C:52-1 to -32. The chief aim when interpreting a law is to determine and give effect to the Legislature's intent. Perez v. Professionally Green, LLC, 215 N.J. 388, 399 (2013) (citation omitted). To do so, courts look first to the plain language of the statute. DiProspero v. Penn, 183 N.J. 477, 493 (2005) (citation omitted). If the language is clear, the court's job is complete. In re Kollman, 210 N.J. 557, 568 (2012). If the wording of a law is ambiguous, a court may examine extrinsic evidence for guidance, including legislative history and committee reports. Ibid. (citing N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012)).

Statutes must also "'be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole.'" Burnett v. Cnty. of Bergen, 198 N.J. 408, 421 (2009) (quoting Bedford v. Riello, 195 N.J. 210, 224 (2008)); see also 2A Sutherland Statutory Construction § 46:5 at 189-90 (7th ed. 2007).

8

B.

This Court recently reviewed some key concepts about the expungement statute in Kollman, supra, 210 N.J. at 568-69.  We revisit them briefly now.

The "primary objective" of the legislative scheme is to

> provid[e] relief to the one-time offender who has led a life of rectitude and disassociated himself with unlawful activity, but not to create a system whereby periodic violators of the law or those who associate themselves with criminal activity have a regular means of expunging their police and criminal records.
>
> [N.J.S.A. 2C:52-32.]

To that end, the law "is designed to eliminate 'the collateral consequences imposed upon otherwise law-abiding citizens who have had a minor brush with the criminal justice system.'" Kollman, supra, 210 N.J. at 568 (quoting In re T.P.D., 314 N.J. Super. 643, 648 (Law Div. 1997), aff'd o.b., 314 N.J. Super. 535 (App. Div. 1998)).

Although records of an arrest, conviction, and related proceedings remain available for certain purposes, see Kollman, supra, 210 N.J. at 568-69 (citing instances when available), the events are otherwise "deemed not to have occurred" if expungement is ordered, N.J.S.A. 2C:52-27.  As a result, a successful applicant does not have to reveal information about expunged criminal records when asked.  Ibid.  The expungement

9

law is also meant to permit defendants to regain various civil privileges like serving on a jury and voting. T.P.D., supra, 314 N.J. Super. at 648 (citing statutes).

"'The general rule favors expungement'" of certain first-time criminal convictions after ten years. Kollman, supra, 210 N.J. at 568 (quoting In re P.A.F., 176 N.J. 218, 221 (2003)); see also N.J.S.A. 2C:52-2(a)(1). Courts may also grant relief after five years if an applicant can demonstrate that expungement "is in the public interest, giving due consideration to the nature of the offense, and the applicant's character and conduct since conviction." Kollman, supra, 210 N.J. at 571-73 (quoting and interpreting N.J.S.A. 2C:52-2(a)(2)). But expungement is not available if an applicant does not meet the statutory prerequisites or the statute otherwise bars relief. N.J.S.A. 2C:52-14(a).

C.

At the heart of this case is the interplay between two parts of the expungement scheme: N.J.S.A. 2C:52-2, which provides for expungement of certain indictable offenses for adults, and N.J.S.A. 2C:52-4.1(a), which outlines the rules for expunging a juvenile adjudication. D.J.B. seeks to expunge his fourth-degree conviction for receiving stolen property under N.J.S.A. 2C:52-2. That section provides that

10

> [i]n all cases, except as herein provided, wherein a person has been convicted of a crime under the laws of this State and <u>who has not been convicted of any prior or subsequent crime</u>, whether within this State or any other jurisdiction, and has not been adjudged a disorderly person or petty disorderly person on more than two occasions may, after the expiration of a period of 10 years from the date of his conviction, payment of fine, satisfactory completion of probation or parole, or release from incarceration, whichever is later, present a duly verified petition as provided in section 2C:52-7 to the Superior Court in the county in which the conviction was entered praying that such conviction and all records and information pertaining thereto be expunged.
>
> . . . .
>
> Although subsequent convictions for no more than two disorderly or petty disorderly offenses shall not be an absolute bar to relief, the nature of those conviction or convictions and the circumstances surrounding them shall be considered by the court and may be a basis for denial of relief if they or either of them constitute a continuation of the type of unlawful activity embodied in the criminal conviction for which expungement is sought.
>
> [<u>N.J.S.A.</u> 2C:52-2(a) (emphasis added).]

Central to this case is the requirement that a person seeking to expunge an indictable offense has not been convicted of a prior or subsequent crime.

The State argues that D.J.B. does not qualify for expungement because of his prior juvenile adjudications. It

11

relies on the language in section 52-4.1(a) that is underscored below:

> Any person adjudged a juvenile delinquent may have such adjudication expunged as follows:
>
> (1) Pursuant to [N.J.S.A.] 2C:52-2, if the act committed by the juvenile would have constituted a crime if committed by an adult;
>
> (2) Pursuant to [N.J.S.A.] 2C:52-3, if the act committed by the juvenile would have constituted a disorderly or petty disorderly persons offense if committed by an adult; or
>
> (3) Pursuant to [N.J.S.A.] 2C:52-4, if the act committed by the juvenile would have constituted an ordinance violation if committed by an adult.
>
> For purposes of expungement, any act which resulted in a juvenile being adjudged a delinquent shall be classified as if that act had been committed by an adult.
>
> [N.J.S.A. 2C:52-4.1(a) (emphasis added).]

This case turns on the meaning of the highlighted sentence. If it applies broadly to other parts of the expungement law, as the State contends, then D.J.B.'s juvenile adjudications would be considered prior adult convictions. And those "prior convictions" would make his 1996 indictable conviction ineligible for expungement under section 52-2. That interpretation would mean that anyone adjudged delinquent for an offense that would be considered a crime if committed by an

12

adult could not have an adult criminal record expunged under any circumstances.

On the other hand, if the underscored language applies only to section 52-4.1(a), adults with a juvenile adjudication could still be eligible for expungement of an adult conviction. For reasons that follow, we conclude that the Legislature did not intend to apply the pivotal sentence to section 52-2 and thereby make it harder to expunge an adult conviction. We agree with the panel in J.B. that the sentence applies only to section 52-4.1(a). See J.B., supra, 426 N.J. Super. at 501, 508.

We begin with the plain language and structure of the statute. The sentence in question -- "[f]or purposes of expungement, any act which resulted in a juvenile being adjudged a delinquent shall be classified as if that act had been committed by an adult" -- appears at the end of section 52-4.1(a). It follows three clauses that tell the reader how to determine whether a juvenile adjudication can be expunged: if the act would have constituted a crime if committed by an adult, look to the requirements of section 52-2; if the act would have amounted to a disorderly or petty disorderly persons offense, look to section 52-3; and if the act would have amounted to an ordinance violation, look to section 52-4. The key sentence that comes next guides those determinations. For example, if the juvenile's act would have constituted a crime, the last

13

sentence directs us to classify the conduct accordingly and then consider the requirements of section 52-2 to see if expungement is appropriate.  Thus, just by its placement, the last sentence appears to apply only to section 52-4.1(a).

If read in isolation, though, the sentence is not crystal clear.  See J.B., supra, 426 N.J. Super. at 506.  It does not expressly say that it applies to the expungement statute in its entirety, as the State suggests.  Nor does the language expressly limit its application to section 52-4.1(a), as D.J.B. submits.  We therefore turn to extrinsic sources for further guidance to determine what the Legislature meant.

D.

The Legislature enacted a comprehensive scheme for expungement in 1979.  L. 1979, c. 178 (codified at N.J.S.A. 2C:52-1 to -32).  Under that law, a court could expunge a criminal conviction if, after ten years, an applicant had not been convicted of a prior or subsequent crime, or of two or more disorderly or petty disorderly persons offenses.  N.J.S.A. 2C:52-2.

The 1979 statute, however, did not provide for expungement of juvenile adjudications.  The Law Division's decision in State v. W.J.A., 173 N.J. Super. 19, 24-25 (Law Div. 1980), brought attention to that fact.  In W.J.A., a thirty-five-year-old man sought to expunge three juvenile adjudications as well as

14

certain adult records, which he would otherwise have to disclose in an application to the Casino Control Commission. Id. at 19, 21. The trial court expunged the adult records but not the juvenile adjudications. Id. at 25. The court explained that "[u]ntil such time as the Legislature authorizes expungement for juvenile delinquency adjudications as opposed to" adult records, "the sole remedy to prevent disclosure lies in the sealing statute." Ibid. (citing N.J.S.A. 2A:4-67). That route, the court acknowledged, offered W.J.A. less protection than an order of expungement. Id. at 23.

Within a year of the decision, the Legislature amended the expungement statute and added a process to expunge adjudications of delinquency. See L. 1980, c. 1963, § 1 (codified at N.J.S.A. 2C:52-4.1). The amended statute provided two paths to expunge records of adjudications: section 52-4.1(a), quoted above, which outlines how to expunge a juvenile adjudication; and section 52-4.1(b), which sets forth various conditions that apply to efforts to expunge an entire juvenile record. N.J.S.A. 2C:52-4.1(a), (b). A third section addresses the expungement of delinquency charges that were later dismissed. N.J.S.A. 2C:52-4.1(c).

The purpose of the amendment is clear from the Sponsor's Statement:

15

Under present law, expungement is now authorized for records of convictions of certain crimes; convictions of disorderly persons offenses; violations of municipal ordinances and arrests not resulting in convictions. There is, however, no procedure authorizing the expungement of juvenile delinquency adjudications. Juvenile records may be "sealed" but they may not be expunged.

The purpose of this bill is to allow for the expungement of juvenile delinquency adjudications. It provides that such records may be expunged under the same conditions as if the act which resulted in the adjudication of delinquency had been committed by an adult.

Additionally, the bill provides that a person may have his entire juvenile record expunged if he has not been convicted of a crime or a disorderly or petty disorderly persons offense or adjudged a delinquent . . . for a period of 5 years and his record contains no offense which could not be expunged if committed by an adult.

[S., No. 1266 (Sponsor's Statement), 199th Leg. (N.J. May 5, 1980) (emphasis added); see also S. Judiciary Comm. Statement to S., No. 1266, 199th Leg. (N.J. June 9, 1980); Assemb. Judiciary, Law, Public Safety & Defense Comm. Statement to S., No. 1266, 199th Leg. (N.J. Aug. 7, 1980).]

Nothing in the legislative history suggests that the amendment was meant to affect the expungement of adult records. See J.B., supra, 426 N.J. Super. at 506.

Before the 1980 amendment, a prior juvenile adjudication could not stand in the way of an effort to expunge an adult criminal record. Nowhere does the legislative history reveal an

16

intent to change that course. The Legislature's goal, instead, was simply to extend the statute "to allow for the expungement of juvenile delinquency adjudications." S., No. 1266 (Sponsor's Statement), supra. We do not read the Legislature's action to "change existing law further than is expressly declared or necessarily implied." 1A Sutherland, supra, § 22.30 at 363-64; see also J.B., supra, 426 N.J. Super. at 508.

For much the same reason, section 32 does not call for a different result. The section states that the law's "primary objective" is to "provid[e] relief to the one-time offender who has [otherwise] led a life of rectitude." N.J.S.A. 2C:52-32. The State and the Attorney General argue that, in light of this provision, someone with an extensive record of juvenile adjudications is not a "one-time offender" eligible for expungement. Yet section 32 was part of the original expungement law enacted in 1979, which did not address juvenile adjudications, and has not been changed since. In other words, when the law was first passed, section 32's limiting principle about "the one-time offender" did not prevent adults with prior juvenile adjudications from expunging a crime. Nothing in the legislative history of the 1980 amendment changed that.

Parts of the Code of Juvenile Justice offer further guidance. The Code expressly states that its purpose is "to remove from children committing delinquent acts certain

17

statutory consequences of criminal behavior." N.J.S.A. 2A:4A-21(b) (emphasis added). More specifically, the Code declares that a juvenile who is adjudged delinquent is not "deemed a criminal by reason of such disposition" and that "[n]o disposition [of delinquency] shall operate to impose any of the civil disabilities ordinarily imposed by virtue of a criminal conviction." N.J.S.A. 2A:4A-48.

When two statutes address the same subject, courts should make every effort "to reconcile them, so as to give effect to both expressions of the lawmaker's will." In re Adoption of a Child by W.P. and M.P., 163 N.J. 158, 182 (2000) (Poritz, C.J., dissenting) (citations omitted). Here, a broad reading of section 52-4.1(a) would run counter to the principles expressed in the Code of Juvenile Justice and impose a clear disability –- a bar to expungement of a crime –- because of a juvenile adjudication alone. A narrower reading allows both statutes to be read "together as a unitary and harmonious whole." In re Petition for Referendum on City of Trenton Ordinance 09-02, 201 N.J. 349, 359 (2010).

Finally, a broad reading of section 52-4.1(a) would render parts of the same statute surplusage. Section 52-4.1(b) provides as follows:

> Additionally, any person who has been adjudged a juvenile delinquent may have his

18

entire record of delinquency adjudications expunged if:

(1) Five years have elapsed since the final discharge of the person from legal custody or supervision or 5 years have elapsed after the entry of any other court order not involving custody or supervision . . . ;

(2) He has not been convicted of a crime, or a disorderly or petty disorderly persons offense, <u>or adjudged a delinquent</u>, or in need of supervision, during the 5 years prior to the filing [of] the petition, and no proceeding or complaint is pending seeking such a conviction or adjudication . . . ;

(3) <u>He was never adjudged a juvenile delinquent</u> on the basis of an act which if committed by an adult would constitute a crime not subject to expungement under [<u>N.J.S.A.</u>] 2C:52-2;

(4) He has never had an adult conviction expunged; and

(5) He has never had adult criminal charges dismissed following completion of a supervisory treatment or other diversion program.

[<u>N.J.S.A.</u> 2C:52-4.1(b) (emphases added).]

As the appellate panel in <u>J.B.</u> observed, if the last sentence of section 52-4.1(a) applied to other parts of the expungement law, "there would be no need to include the language 'adjudged a delinquent'" in section 52-4.1(b)(2). <u>J.B.</u>, <u>supra</u>, 426 <u>N.J. Super.</u> at 507. The same reasoning applies to section 52-4.1(b)(3). In both instances, a broad reading of the

19

critical sentence would have classified acts of juvenile delinquency as though they had been committed by an adult -- and dispensed with any need for the language in section 52-4.1(b) highlighted above.  We decline to follow that approach because courts should avoid interpreting a statute in a way that renders words unnecessary or meaningless.  Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587 (2013) (citation omitted); see also In re Commitment of J.M.B., 197 N.J. 563, 573, cert. denied, 558 U.S. 999, 130 S. Ct. 509, 175 L. Ed. 2d 361 (2009).

For all of those reasons, we conclude that the last sentence in section 52-4.1(a) applies only to the expungement of juvenile adjudications.

IV.

We evaluate D.J.B.'s petition in light of the above principles.  He seeks to expunge a 1996 fourth-degree conviction for receiving stolen property, pursuant to section 52-2.  Based on the above analysis, we do not consider his prior juvenile adjudications in reviewing the petition.  The proper focus is on the prerequisites for expungement contained in section 52-2.

More than ten years have passed since D.J.B.'s conviction. He has two prior convictions for disorderly persons offenses, which are not an impediment under the statute.  N.J.S.A. 2C:52-2(a).  He has no other prior or subsequent convictions as an

20

adult.  Accordingly, he is presumptively eligible for expungement.  Kollman, supra, 210 N.J. at 570 (citation omitted).

The burden thus shifts to the State to overcome the presumption and demonstrate why D.J.B. does not qualify for relief under the statute.  Ibid.  The State has focused its argument on D.J.B.'s prior adjudications.  It did not raise other possible impediments to expungement under the statute.  For example, it has not suggested that the nature of D.J.B.'s later disorderly persons offenses for contempt provide a basis for denying relief.  See N.J.S.A. 2C:52-2(a) (last unnumbered ¶).  Also, the State has not argued that, under N.J.S.A. 2C:52-14(b), "[t]he need for the availability of records outweighs" the benefits of expungement in this case.  For his part, D.J.B. submits that he has not been convicted of any offense for more than a decade, since age twenty-two, and that his single, adult conviction prevents him from opening an insurance brokerage firm and coaching youth baseball.

Because D.J.B. meets the statutory requirements for expungement and the State has identified no grounds to deny him relief, he is entitled to an order expunging his 1996 conviction for receipt of stolen property.

21

V.

For the reasons stated above, we reverse the judgment of the Appellate Division and remand to the trial court for the entry of an order expunging D.J.B.'s 1996 conviction.

JUSTICES LaVECCHIA, ALBIN, and PATTERSON and JUDGE CUFF (temporarily assigned) join in CHIEF JUSTICE RABNER's opinion. JUDGE RODRÍGUEZ (temporarily assigned) did not participate.

SUPREME COURT OF NEW JERSEY

NO. __A-39__ SEPTEMBER TERM 2012

ON CERTIFICATION TO _____Appellate Division, Superior Court_____

IN THE MATTER OF THE
EXPUNGEMENT APPLICATION
OF D.J.B.

DECIDED _____January 16, 2014_____

_____Chief Justice Rabner_____ PRESIDING

OPINION BY _____Chief Justice Rabner_____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | --------------------- | ------------------ |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 5 | |

1