SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

### In the Matter of the Civil Commitment of W.W. (A-63-19) (083890)

**Argued November 9, 2020 -- Decided March 11, 2021**

**FERNANDEZ-VINA, J., writing for the Court.**

In this appeal, the Court considers whether the State must present testimony from a psychiatrist in support of the need for continued involuntary commitment of a convicted sexually violent offender at an annual review hearing under the New Jersey Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38.

W.W. was civilly committed after pleading guilty to the sexual assault of a five-year-old girl. At his annual review hearing for 2019, the State presented expert testimony from psychiatrist Dr. Marta Scott and psychologist Dr. Jamie Canataro. The State's two experts presented conflicting opinions on W.W.'s risk of reoffending and whether he should remain committed. Dr. Scott recommended conditional discharge, while Dr. Canataro concluded further commitment was appropriate.

The trial court ordered the continued commitment of W.W. The court concluded that neither the State nor the court was bound by the testimony of the State's psychiatrist, and it credited Dr. Canataro's testimony over Dr. Scott's. The Appellate Division affirmed. The Court granted W.W.'s petition for certification. 241 N.J. 468 (2020).

**HELD:** The plain language of N.J.S.A. 30:4-27.30(b) requires the State to produce psychiatric testimony <u>in support of commitment</u> when the State seeks the initial or continued commitment of a sexually violent predator. The State therefore did not meet its burden in this case by producing a psychiatrist who did not support commitment.

1. A person who has been committed under the SVPA is entitled to an annual review hearing of the need for involuntary commitment. N.J.S.A. 30:4-27.30(b) requires that "[a] psychiatrist on the person's treatment team . . . shall testify at the hearing to the clinical basis for the need for involuntary commitment." That provision is identical to its corollary in the general civil commitment statute, N.J.S.A. 30:4-27.13(b), and is also substantially similar to the court rule governing civil commitment of adults, R. 4:74-7(e). The Appellate Division has determined that both N.J.S.A. 30:4-27.13 and Rule 4:74-7(e) require that a psychiatrist on the patient's treatment team testify at the hearing, and provide medical testimony supporting the need for commitment. (pp. 15-17)

1

2. Because the SVPA does not define the phrase "to the clinical basis for the need for involuntary commitment," the Court interprets that language according to its generally accepted meaning. The Court reviews the definitions of "basis" and "need" and notes that the statute's express focus on testimony by a psychiatrist, who holds a medical degree, cannot be interpreted to encompass testimony by a psychologist, who does not. The Legislature has distinguished between psychiatric and psychological experts in the Rules of Evidence. And when it intends that the evaluation of either a psychiatrist or psychologist suffice for a particular purpose, it has said so explicitly. See N.J.S.A. 2C:4-5. The clear language of N.J.S.A. 30:4-27.30(b) indicates that a psychiatrist must testify to those underlying facts that require involuntary commitment of the individual. It is not enough that a psychiatrist testifies -- even if that testimony is against involuntary commitment -- and that someone else testifies to the need for commitment. (pp. 17-19)

3. The Legislature deliberately modeled the SVPA's commitment procedures after the general civil commitment statute. Five years before the enactment of the SVPA, the Appellate Division held that the language "to the clinical basis for the need for involuntary commitment to treatment" in the civil commitment statute requires the psychiatrist's testimony to be in support of commitment. See In re Commitment of Raymond S., 263 N.J. Super. 428, 432 (App. Div. 1993). The Court presumes that, as it crafted the SVPA, the Legislature was aware that the courts had interpreted the general civil commitment statute to require psychiatric testimony in support of commitment. The Legislature nevertheless used the exact same phrasing in the SVPA, without a corrective definition, thus reflecting legislative intent to require psychiatric testimony in support of commitment under the SVPA as well. (pp. 19-21)

4. The SVPA itself maintains an important and consistent burden on the State, requiring psychiatric testimony in support of commitment at each stage in the proceedings. To initiate commitment proceedings under the SVPA, the State must present at least one clinical certificate prepared by a psychiatrist in support of commitment. N.J.S.A. 30:4-27.2(b), -27.28(c). The SVPA further requires the State to produce psychiatric testimony at both the initial commitment hearing and at each review hearing. When viewing the statute as a whole, it would be discordant to demand more from the certifications required to commence a hearing than from the testimony provided at the hearings. (p. 21)

5. Because of the passage of time between the trial court's decision and the issuance of this opinion, the Court affords the State an opportunity to provide a psychiatrist in support of commitment in a new review hearing. Pending the court's determination after that rehearing, W.W. shall remain committed under the SVPA. (p. 22)

**REVERSED and REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE FERNANDEZ-VINA's opinion.**

2

SUPREME COURT OF NEW JERSEY
A-63 September Term 2019
083890

In the Matter of the Civil Commitment
of W.W., SVP-86-00.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| November 9, 2020 | March 11, 2021 |

Susan Remis Silver, Assistant Deputy Public Defender, argued the cause for appellant W.W. (Joseph E. Krakora, Public Defender, attorney; Susan Remis Silver, on the briefs).

Stephen Slocum, Deputy Attorney General, argued the cause for respondent State of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel, and Stephen Slocum, on the brief).

Tess Borden argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Tess Borden, Alexander Shalom, and Jeanne LoCicero, on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

The New Jersey Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38, requires an annual review hearing to assess the continuing need for the involuntary commitment of a convicted sexually violent offender. The statute directs that a psychiatrist "shall testify at the hearing to the clinical basis for the need for involuntary commitment as a sexually violent predator." N.J.S.A. 30:4-27.30(b). The issue in this appeal is whether the State must present such testimony in order to support commitment, or whether the State can nevertheless meet its burden to show the need for continued commitment despite producing a psychiatrist who does not support commitment.

Here, the State produced a psychiatrist who recommended conditional discharge rather than commitment. Based on testimony by the State's other expert, a psychologist, the trial court ordered the continued commitment of W.W. The Appellate Division affirmed, finding that the trial court was not required to accept the psychiatrist's opinion because commitment decisions are legal ones, not medical ones.

We disagree with the Appellate Division's findings. We conclude that the plain language of N.J.S.A. 30:4-27.30(b) requires the State to produce psychiatric testimony in support of commitment, and such a reading is supported by the legislative history and statutory scheme of the SVPA.

2

Therefore, we reverse the judgment of the Appellate Division and remand for a rehearing.

## I.

## A.

We begin by summarizing the pertinent facts and procedural history. In 1994, W.W. was arrested and charged with sexual assault and aggravated sexual assault for events that occurred over a period of four months in 1993. W.W. admitted to sexually assaulting a five-year-old girl who lived at his mother's house, touching her breasts and vaginal area, performing cunnilingus on her, and masturbating in his pants.

W.W. pled guilty to sexual assault and was sentenced to seven years' imprisonment. An evaluation found that W.W. met the requirements of the New Jersey Sex Offender Act, and that he was eligible for treatment at the Adult and Diagnostic Treatment Center, where he served five years of his seven-year sentence.

On May 30, 2000, the State petitioned to civilly commit W.W. under the SVPA. On October 27, 2000, W.W. was committed to a Special Treatment Unit (STU), where he has been for approximately twenty years. At the time W.W. was evaluated by the experts in this case, he was seventy-one years old.

3

While committed, W.W. "disclosed a longstanding history of exhibitionism, voyeurism, and stalking behavior." He reported driving around naked and described a "long-standing sexual fantasy of driving in his car naked and picking up a small female child to molest." He also reported a fantasy in which he would kill his victim to avoid being caught, although his treatment team reported that he has since downplayed that statement.

W.W. also revealed three other previously unreported victims in incidents that occurred when W.W. was nineteen, twenty-seven, and forty-three-years-old, respectively. The first victim was a five-year-old girl W.W.'s mother was babysitting. W.W. reported bouncing her on his knee, being aroused, and masturbating that night. The second was his neighbor's daughter, who was between five and eight years old. W.W. disclosed that he had her come to his house and "lay down on the living room floor with her back toward him," while he masturbated. W.W. wanted the girl to touch him, but stopped when her siblings knocked on the door. The third was a five- to eight-year-old girl who sat on W.W.'s knee at church while he fondled her chest. W.W. reported that he then masturbated while thinking of her that night.

In June 2011, his treatment team recommended W.W. begin furloughs. However, shortly after they began, he failed a polygraph examination. W.W. admitted he had been masturbating to thoughts of a young girl he had seen in a

4

mall.  He added that he had been fantasizing about seeing a young girl and sexualizing her for years.  Following those admissions, W.W.'s furloughs were terminated.  He acknowledged to his treatment team that he chose not to use the relapse prevention techniques he was taught.

B.

W.W.'s review hearing required by the SVPA was conducted on January 10 and 23, 2019.  The State proposed to present expert testimony from psychiatrist Dr. Marta Scott and psychologist Dr. Jamie Canataro.  W.W. did not present any witnesses, nor did he testify.

On the first day of the hearing, the State recognized that its two experts were going to present conflicting opinions on W.W.'s risk of reoffending and whether he should remain committed.  Dr. Scott recommended conditional discharge, while Dr. Canataro concluded further commitment was appropriate. As a result of that conflict and Dr. Scott's adverse testimony, the State informed the trial court that Dr. Scott would not be the State's witness.  The trial court rejected the State's attempt, telling the State that "[i]t's your obligation under the statute to produce psychiatric testimony. . . .  If you don't do that, you can't possibly prevail."

The State then called Dr. Scott, the psychiatrist who recommended that W.W. be conditionally discharged.  Dr. Scott's testimony centered around her

5

opinion that W.W.'s "tendency to say things that he doesn't mean when angry," cognitive difficulties, and "low average" IQ all led to a number of confusing reports, including about whether and under what circumstances W.W. experiences arousal and whether he felt he could refrain from reoffending.

Dr. Scott testified that W.W. "demonstrates a great deal of confusion" in describing his arousal or lack thereof. She referred to a roleplay where W.W. did not experience an erection, yet, after the group purported to observe his sexual interest, W.W. acknowledged that he was aroused. She also testified about a period in which W.W. was placed on probation as a result of stating that he was not able to refrain from reoffending and that he was glad that he would not be discharged from the STU. Dr. Scott questioned the validity of those statements.

In her conclusion, Dr. Scott diagnosed W.W. with pedophilic disorder and borderline intellectual functioning. Regarding his risk to sexually reoffend, Dr. Scott found that "the likelihood of him committing another contact offense does not meet the threshold of highly likely," and recommended conditional discharge. Dr. Scott testified that the most important factor in her analysis was W.W.'s age, which resulted in his "declining sexual drive, increased self-control, and decreased access to

6

victims." Dr. Scott also testified that W.W. took a combination of Prozac and Proscar or Finasteride, which reportedly "significantly decreased his sexual urges."

On the second day of the hearing, the State presented a psychologist, Dr. Canataro, who testified in support of commitment. Dr. Canataro's testimony centered around W.W.'s strong arousal, inability or unwillingness to use intervention techniques, and obsessiveness over victims he never made contact with, all despite twenty years of treatment. Dr. Canataro emphasized W.W.'s "longstanding arousal pattern" with victims exclusively between the ages of five and eight. She testified that this arousal remains strong even in W.W.'s advanced age and after years of treatment. For example, Dr. Canataro testified to stopping a discussion about a female child because "[W.W.] became so sexually aroused that it interfered with the interview." She also detailed a time during a roleplay in which W.W.'s arousal was so strong that he chose not to implement the intervention techniques he had learned.

In response to Dr. Scott's recommendation of conditional discharge, Dr. Canataro pointed out that the same conditions were available when W.W. was on furlough in 2008. She emphasized that, even under those conditions, W.W. reported masturbating on multiple occasions to a young girl he saw for only an instant at the mall. Dr. Canataro testified that it was important for her to

7

inform the court that W.W.'s only intervention technique is abstinence. She testified that "[h]e cannot refrain. We're basically asking him to extinguish, give up his total sexual identity," which is not a reasonable long-term solution.

In support of her recommendation, Dr. Canataro testified that if W.W. is not recommitted to the STU, his risk to sexually reoffend is high. She diagnosed W.W. with pedophilic disorder, voyeuristic disorder, sexual masochistic disorder, and borderline intellectual functioning.

The trial court issued its oral decision on January 28, 2019, finding the need to continue W.W.'s commitment. It concluded that neither the State nor the court was bound by the testimony of the State's psychiatrist. Unpersuaded by Dr. Scott's reliance on W.W.'s age and conditions to reduce his risk, the trial court credited Dr. Canataro's testimony.

The Appellate Division affirmed. Specifically addressing W.W.'s argument that the State failed to meet its burden because its psychiatrist did not support commitment, the Appellate Division reasoned that "the trial court [was] 'not required to accept all or any part of' an expert's opinion." Because "[t]he ultimate determination [regarding involuntary civil commitment] is 'a legal one, not a medical one, even though guided by medical expert testimony,'" the Appellate Division concluded the trial court had the ability and a reasonable basis to credit Dr. Canataro over Dr. Scott.

8

We granted W.W.'s petition for certification. 241 N.J. 468 (2020). We also granted the motion of the American Civil Liberties Union of New Jersey (ACLU) to participate as amicus curiae.

II.

A.

Petitioner W.W. argues that the State failed to meet its burden of production for commitment under the SVPA because Dr. Scott, the State's only psychiatrist, testified that W.W. did not meet commitment standards and recommended conditional discharge. He submits that the trial court and Appellate Division erred in concluding that the State was not bound by the psychiatric testimony it was required to produce. Relying on the plain language of the SVPA, W.W. submits that psychiatric testimony in support of commitment must be the basis of the State's petition for commitment and that additional testimony permitted under the SVPA, such as testimony by a psychologist, is not sufficient on its own to meet the burden to commit or recommit. W.W. stresses that the extraordinary liberty interest at stake makes it imperative that the State satisfy its burden of producing a psychiatrist to testify in support of commitment.

## B.

In opposition, the State contends that it "met its burden of production by producing the psychiatric testimony of Dr. Scott," and that it was the trial court's decision to accept or reject it. Thus, the State claims the court made no mistake in relying on the credible testimony of Dr. Canataro.

The State also argues N.J.S.A. 30:4-27.30(b) "does not dictate the substance of [the expert] testimony -- it does not, because it cannot, expect the expert to simply serve as a mouthpiece in favor of recommitment despite treatment progress or other changes in circumstances." The State asserts that if section 27.30(b) were interpreted to require psychiatric testimony in favor of commitment, "when taken to the extreme, it would preclude the State from ever agreeing that conditional discharge is appropriate."

## C.

Amicus curiae ACLU aligns itself with W.W.'s position. It stresses that the plain language of the SVPA and the dictionary definitions of "basis" and "need," show that the psychiatric testimony must be in support of commitment.

The ACLU also relies on the legislative history of the SVPA, pointing out that the SVPA was based on the general civil commitment statute which uses the same phrase "clinical basis for the need for involuntary commitment." The Appellate Division found this phrase in the general civil commitment

statute to require testimony in support of commitment. Presuming the Legislature was aware of that decision and still chose to use the phrase, the ACLU submits that the Legislature intended for the State to produce psychiatric testimony in support of commitment when making applications under the SVPA. The ACLU further emphasizes that psychiatric testimony in support of commitment is needed to initially commit someone and that it would be inconsistent with the SVPA's overall scheme not to require the same at annual review hearings.

III.

A.

Our Court reviews issues of statutory interpretation de novo. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Thus, this Court owes no special deference to the trial court's interpretation of the State's burden under the SVPA. In re Civil Commitment of D.Y., 218 N.J. 373 (2014) (citing Manalapan Realty, L.P., 140 N.J. at 378).

"[I]n the interpretation of a statute our overriding goal has consistently been to determine the Legislature's intent." Young v. Schering Corp., 141 N.J. 16, 25 (1995) (quoting Roig v. Kelsey, 135 N.J. 500, 515 (1994)). "'To determine the Legislature's intent, [courts] look to the statute's language and give those terms their plain and ordinary meaning,' because 'the best indicator

11

of that intent is the plain language chosen by the Legislature.'" State v. J.V., 242 N.J. 432, 442 (2020) (first quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005); and then quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)).

"If the language is clear, the court's job is complete." In re Expungement Application of D.J.B., 216 N.J. 433, 440 (2014). An appellate court will refer to extrinsic sources to determine legislative intent "[o]nly if the words of the enactment are shrouded in ambiguity." Zabilowicz v. Kelsey, 200 N.J. 507, 513 (2009).

Additionally, a statute must "be read in [its] entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole." D.J.B., 216 N.J. at 440 (quoting Burnett v. County of Bergen, 198 N.J. 408, 421 (2009)). And "when a 'literal interpretation of individual statutory terms or provisions' would lead to results 'inconsistent with the overall purpose of the statute,' that interpretation should be rejected." Hubbard v. Reed, 168 N.J. 387, 392-93 (2001) (quoting Cornblatt v. Barow, 153 N.J. 218, 242 (1998)); see also Chase Manhattan Bank v. Josephson, 135 N.J. 209, 225 (1994) (supporting "[f]urther inquiry into a statute's intended meaning . . . where the plain meaning seems inconsistent with the statutory scheme").

12

"[T]he Legislature is presumed to be aware of judicial construction of its enactments." DiProspero, 183 N.J. at 494 (quoting N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 195 n.6 (2002)). Thus, "a change of language in a statute ordinarily implies a purposeful alteration in [the] substance of the law." Ibid. (alteration in original) (quoting Nagy v. Ford Motor Co., 6 N.J. 341, 348 (1951)).

B.

Here, we apply those principles to determine whether the psychiatric testimony required by the SVPA in a review hearing must be in support of commitment.

The Attorney General may initiate court proceedings for the involuntary commitment "of an inmate who is scheduled for release upon expiration of a maximum term of incarceration by submission to the court of two clinical certificates for a sexually violent predator, at least one of which is prepared by a psychiatrist." N.J.S.A. 30:4-27.28(c). A "clinical certificate" is defined as a form that is prepared, approved, and completed as prescribed by statute and that states, in part, "that the person is in need of involuntary commitment to treatment." N.J.S.A. 30:4-27.2(b). "In need of involuntary commitment" or "in need of involuntary commitment to treatment" is defined, in turn, to mean

> that an adult with mental illness, whose mental illness
> causes the person to be dangerous to self or dangerous

13

to others or property and who is unwilling to accept appropriate treatment voluntarily after it has been offered, needs outpatient treatment or inpatient care at a short-term care or psychiatric facility or special psychiatric hospital because other services are not appropriate or available to meet the person's mental health care needs.

[N.J.S.A. 30:4-27.2(m).]

After a finding of probable cause, it is the responsibility of the State to present to the court "the case for the person's involuntary commitment as a sexually violent predator" at an initial hearing. N.J.S.A. 30:4-27.29(b). The State must establish three elements:

(1) that the individual has been convicted of a sexually violent offense; (2) that he suffers from a mental abnormality or personality disorder; and (3) that as a result of his psychiatric abnormality or disorder, "it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend.

[D.Y., 218 N.J. at 380-81 (quoting In re Civil Commitment of R.F., 217 N.J. 152, 173 (2014)).]

"The terms of the statute must be strictly met"; involuntary commitment under the SVPA is "limited to those who are highly likely to sexually reoffend." Ibid. (emphasis omitted).

"The State bears the burden of proving all three elements by clear and convincing evidence." R.F., 217 N.J. at 173. "Clear and convincing evidence is evidence that produces 'a firm belief or conviction' that the allegations are

14

true; it is evidence that is 'so clear, direct and weighty and convincing' that the factfinder can 'come to a clear conviction' of the truth without hesitancy." Ibid. (quoting In re Jobes, 108 N.J. 394, 407 (1987)).

A person who has been committed under the SVPA is entitled to "an annual court review hearing of the need for involuntary commitment as a sexually violent predator." N.J.S.A. 30:4-27.35. The hearing is conducted pursuant to N.J.S.A. 30:4-27.30, which requires in part that

> [a] psychiatrist on the person's treatment team who has conducted a personal examination of the person as close to the court hearing date as possible, but in no event more than five calendar days prior to the court hearing, shall testify at the hearing to the clinical basis for the need for involuntary commitment as a sexually violent predator. Other members of the person's treatment team and any other witness with relevant information offered by the person or the Attorney General shall also be permitted to testify at the hearing.
>
> [N.J.S.A. 30:4-27.30(b).]

"If the court finds by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator, it shall issue an order authorizing the involuntary commitment . . . ." N.J.S.A. 30:4-27.32(a). "Given the statutory definition of a 'sexually violent predator,' expert witnesses in the fields of psychiatry and psychology routinely play leading roles in SVPA commitment hearings." D.Y., 218 N.J. at 382.

15

Commitment under the SVPA is closely connected to the general civil commitment statute, N.J.S.A. 30:4-27.1, but was enacted by the Legislature in recognition that "[t]he nature of the mental condition from which a sexually violent predator may suffer may not always lend itself to characterization under the existing statutory standard." N.J.S.A. 30:4-27.25(b). The key provision in this case, N.J.S.A. 30:4-27.30(b), is identical to its corollary in the general civil commitment statute. See N.J.S.A. 30:4-27.13(b) ("A psychiatrist on the patient's treatment team . . . shall testify at the hearing to the clinical basis for the need for involuntary commitment to treatment."). The language of N.J.S.A. 30:4-27.30(b) is also substantially similar to the language used in the court rule governing civil commitment of adults. See R. 4:74-7(e) ("The application for commitment to treatment shall be supported by the oral testimony of a psychiatrist on the patient's treatment team . . . .").

That language and the phrase "clinical basis for the need for involuntary commitment" have been considered before by the Appellate Division in both general civil commitment and SVPA commitment cases. See In re Commitment of Raymond S., 263 N.J. Super. 428, 432 (App. Div. 1993); In re Civil Commitment of A.H.B., 386 N.J. Super. 16, 24-25 (App. Div. 2006). The Appellate Division determined that both N.J.S.A. 30:4-27.13 and Rule 4:74-7(e) "require that a psychiatrist on the patient's treatment team testify at

16

the hearing, and provide medical testimony <u>supporting the need for commitment</u>." <u>A.H.B.</u>, 386 N.J. Super. at 25 (emphasis added) (quoting <u>Raymond S.</u>, 263 N.J. Super. at 432).

IV.

Applying the principles of statutory construction to the relevant provision of the SVPA, we conclude that the Legislature intended for N.J.S.A. 30:4-27.30(b) to require a psychiatrist to testify in support of commitment and that the State therefore did not meet its burden by producing a psychiatrist who did not support commitment.

A.

Once again, N.J.S.A. 30:4-27.30(b) provides, in relevant part, that "[a] psychiatrist on the person's treatment team . . . shall testify at the hearing to the clinical basis for the need for involuntary commitment as a sexually violent predator." The statute is clear that a psychiatrist must testify at the hearing. At issue is the meaning of the phrase "to the clinical basis for the need for involuntary commitment."

Because the SVPA does not supply its own definition of the phrase, we interpret that language according to its generally accepted meaning. <u>See</u> <u>In re Plan for the Abolition of the Council on Affordable Hous.</u>, 214 N.J. 444, 467 (2013). A "basis" is "[a] fundamental principle; an underlying fact or

17

condition; a foundation or starting point."  Black's Law Dictionary 185 (11th ed. 2019).  And "need" is "[t]he lack of something important; a requirement."  Id. at 1243.

The statute's express focus on testimony by a psychiatrist, who holds a medical degree, cannot be interpreted to encompass testimony by a psychologist, who does not.  The Legislature has distinguished between psychiatric and psychological experts in our Rules of Evidence -- N.J.R.E. 505 provides for a psychologist-patient privilege, whereas the privilege between psychiatrists and their patients is part of the physician-patient privilege set forth in N.J.R.E. 506.  See State v. Kane, 449 N.J. Super. 119, 135 (App. Div. 2017).  And when the Legislature intends that the evaluation of either a psychiatrist or psychologist suffice for a particular purpose, it has said so explicitly.  See N.J.S.A. 2C:4-5 ("Whenever there is reason to doubt the defendant's fitness to proceed, the court may on motion by the prosecutor, the defendant or on its own motion, appoint at least one qualified psychiatrist or licensed psychologist to examine and report upon the mental condition of the defendant."  (emphasis added)).

Thus, the clear language of the statute indicates that a psychiatrist must testify to those underlying facts that require involuntary commitment of the individual.  It is not enough, under the statute's plain terms, that a psychiatrist

18

testifies -- even if that testimony is against involuntary commitment -- and that someone else testifies to the need for commitment. Since the statute's language is not ambiguous, we need not look to extrinsic sources for further guidance. We nevertheless note that the provision's plain meaning accords with both the legislative history of the Act and the overarching statutory scheme.

B.

The SVPA's legislative history clearly establishes that the Legislature deliberately modeled the SVPA's commitment procedures after the general civil commitment statute that predated it. The Sponsor's Statement to the bill that became the SVPA provides that the SVPA's procedures are similar to N.J.S.A. 30:4-27.10 and N.J.S.A.30:4-27.12, which set out the commitment process for general civil commitment. Sponsor's Statement to S. 895 15-16 (L. 1998, c. 71). The findings in the SVPA itself declare that it was enacted in part "to modify the involuntary civil commitment process in recognition of the need for commitment of those sexually violent predators who pose a danger to others." N.J.S.A. 30:4-27.25(c). And, finally, the Legislature took the language at issue, that a psychiatrist "shall testify to the clinical basis for the need for involuntary commitment," directly from the general civil commitment

19

guidelines for initial commitment and review hearings.  See N.J.S.A. 30:4-27.13.

Because the Legislature clearly intended the SVPA's procedure to follow that of the general civil commitment statute, and because the Legislature was presumptively aware of the judicial construction of such procedure, we review precedent from the general civil commitment statute to decipher the Legislature's intent in regard to the SVPA.

While considering the general civil commitment statute in 1993, the Appellate Division was presented with the same question that is before this Court:  whether the language "to the clinical basis for the need for involuntary commitment to treatment" requires the psychiatrist's testimony to be in support of commitment.  Raymond S., 263 N.J. Super. 428 (App. Div. 1993). The Appellate Division answered in the affirmative.  Id. at 432.

Five years later, the Legislature enacted the SVPA.  We presume that, as it crafted the SVPA, the Legislature was aware that the courts had interpreted the general civil commitment statute to require psychiatric testimony in support of commitment.  See DiProspero, 183 N.J. at 494.  So informed, the Legislature nevertheless used the exact same phrasing in the SVPA, without a corrective definition.  Using the same language thus reflects legislative intent

20

to require psychiatric testimony in support of commitment under the SVPA as well.

And the SVPA itself maintains an important and consistent burden on the State, requiring psychiatric testimony in support of commitment at each stage in the proceedings.

To initiate commitment proceedings under the SVPA, the State must present two clinical certificates "which state[] that the person is in need of involuntary commitment to treatment." N.J.S.A. 30:4-27.2(b). At least one of those certificates must be prepared by a psychiatrist. N.J.S.A. 30:4-27.28(c). Therefore, to begin the commitment process under the SVPA, a psychiatrist must support commitment.

The SVPA further requires the State to produce psychiatric testimony at both the initial commitment hearing and again at each review hearing pursuant to N.J.S.A. 30:4-27.30(b). See N.J.S.A. 30:4-27.35. When viewing the statute as a whole, it would be discordant to demand more from the certifications required to commence a hearing than from the testimony provided at the hearings. As such, interpreting N.J.S.A. 30:4-27.30(b) to require psychiatric testimony in support of commitment at hearings is harmonious with the commencement procedure and creates a consistent burden on the State throughout the commitment process.

21

## C.

We find that the plain text of N.J.S.A. 30:4-27.30(b) requires a psychiatrist to testify in support of commitment when the State seeks the initial or continued commitment of a sexually violent predator.

Because of the passage of time between the trial court's decision on January 29, 2019, and the issuance of this opinion, the Court shall afford the State an opportunity to provide a psychiatrist in support of commitment in a new review hearing pursuant to N.J.S.A. 30:4-27.35.  Pending the court's determination after that rehearing, W.W. shall remain committed under the SVPA.

## V.

We reverse the judgment of the Appellate Division and remand for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE FERNANDEZ-VINA's opinion.

22