263 N.J. Super. 428 (1993)
623 A.2d 249
IN THE MATTER OF THE COMMITMENT OF RAYMOND S., APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1993.
Decided March 4, 1993.
*430 Before Judges LONG, D'ANNUNZIO and KEEFE.
Roslyn L. Carter, argued the cause for appellant (Zulima V. Farber, Public Advocate, attorney. Ms. Carter on the brief).
Gil D. Messina, argued the cause for respondent (Malcolm V. Carton, Monmouth County Counsel, attorney, Mr. Messina on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
Raymond S. was confined to Marlboro Psychiatric Hospital (Marlboro) on January 17, 1992, pursuant to a temporary order of commitment. On February 5, 1992, a commitment hearing was held before a Law Division judge. At the hearing, assigned *431 counsel for Raymond requested that he be placed on voluntary status or conditionally extended pending placement (CEPP). See R. 4:74-7(b)(2). The judge rejected counsel's request and entered an order of involuntary commitment from which Raymond now appeals.
Raymond contends on appeal that deficiencies in the proceedings denied him procedural due process, and that there was insufficient evidence to support a finding of dangerousness under the clear and convincing standard required by case law and statute. Our review of the record in light of these contentions satisfies us that the involuntary commitment order under review must be reversed.[1]
Involuntary commitment to a mental hospital is state action which deprives the committee of important liberty interests and, as such, triggers significant due process requirements. In re S.L., 94 N.J. 128, 137, 462 A.2d 1252 (1983). In light of the committee's significant constitutionally protected interests, our Legislature and the New Jersey Supreme Court have promulgated statutes and rules to ensure that no person is involuntarily committed to a psychiatric institution without having been afforded procedural and substantive due process. N.J.S.A. 30:4-27.1 to 27.23; R. 4:74-7. Consequently, a person may not be involuntarily committed to a psychiatric facility without proof by clear and convincing evidence that the individual has a mental illness, and the mental illness causes the patient to be dangerous to self, to others, or to property. N.J.S.A. 30:4-27.9(b); N.J.S.A. 30:4-27.15(a); R. 4:74-7(f).
*432 The case for involuntary commitment must be presented by County Counsel. N.J.S.A. 30:4-27.12. However, evidence relevant to the question of whether the patient is subject to commitment must necessarily come from the testimony of an expert witness. For that reason, both statute and court rule require that a psychiatrist on the patient's treatment team testify at the hearing, and provide medical testimony supporting the need for commitment. Specifically, a psychiatrist who testifies must have conducted a personal examination of the patient within five calendar days prior to the court hearing. N.J.S.A. 30:4-27.13(b); R. 4:74-7(e). These are the minimal requirements; other members of the treatment team may also testify if deemed necessary. Id.
The patient is also entitled to representation by either appointed or personal counsel. Such counsel has the right to cross-examine witnesses advancing commitment, and the right to present evidence on behalf of the patient. N.J.S.A. 30:4-27.14; R. 4:74-7(e).
These procedural and substantive safeguards must be scrupulously followed. Thus, we reject any suggestion that the listing of 76 hearings on the February 5th calendar justified shortcuts in the commitment process. We appreciate that a trial judge presented with such a calendar is placed under considerable time constraints. However, the answer to the problem is that those in charge of calendaring must be sensitive to the rights of patients and to the requirements of due process.
Although we were advised at oral argument that county counsel was present at the hearing, it is not reflected in the transcript. The case for commitment was advanced by the judge rather than by county counsel. Such procedure is inappropriate because of the statutory requirement that county counsel present the case for commitment, and also because it places the judge in the role of an adversary rather than that of a neutral decision maker.
*433 Dr. Hoheb testified at the hearing. The record does not reveal whether he is a psychiatrist or, if he is, whether he is a member of Raymond's treatment team. However, assuming that he is both, there is no evidence, as required by statute and rule, that he examined Raymond within five calendar days of the court hearing, or that he examined Raymond's medical records before testifying. Indeed, it appears that much of his information came from conversations with people identified only as "the staff."[2]
In terms of mental illness, Dr. Hoheb testified that Raymond was hallucinating, psychotic and depressed on admission to Marlboro on January 17th. In terms of his current status he simply said that "the staff feels that he [Raymond] continues" to maintain that condition. However, the doctor acknowledged that Raymond denied he was still hallucinating, psychotic and depressed. The "staff" is not more particularly identified by the doctor, and, as previously indicated, there is no evidence that he conducted his own examination to determine Raymond's actual condition. Nonetheless, the doctor offered the opinion that Raymond could not "take care of himself in his present state of delusions and his hallucinations," because his parents were not willing to take him home and care for him. However, this testimony reasonably implied that Raymond would not be dangerous to himself if he were discharged into a setting where supervision could be provided.
In light of the doctor's testimony, his appointed counsel suggested that Raymond be placed in CEPP status. Undoubtedly, counsel recognized that the doctor's testimony called into play that portion of the statute which provides that a patient is not to be considered a danger to self where the patient's need *434 for nourishment, essential medical care or shelter can be satisfied "with the supervision and assistance of others who are willing and available." N.J.S.A. 30:4-27.2(h). Despite counsel's suggestion, however, no further discussion was undertaken by either Dr. Hoheb or the court relative to the alternative disposition. Disregarding counsel's protest that the doctor's testimony did not meet the criteria necessary for involuntary commitment, the judge interrupted counsel's argument and ordered that Raymond's commitment be continued. No opportunity for cross examination was afforded. When counsel again protested the lack of evidence in favor of the commitment the court's answer was simply: "take an appeal."
Clearly, proceedings conducted in this manner deprived Raymond of the procedural due process afforded him by the statutes and court rules previously cited. More importantly, there was insufficient medical evidence produced to support a conclusion by clear and convincing evidence that Raymond was currently suffering from a mental illness, or, if he was, that the illness made him a danger to himself.
The judgment of involuntary commitment is reversed.
NOTES
[1] While this appeal was pending, Raymond's commitment status was changed to CEPP, and he was subsequently discharged to the John L. Montgomery Home on September 2, 1992. However, Raymond's changed status does not moot this appeal, because a finding in his favor may have an effect on the adjustment of his hospital bill. See Matter of Commitment of A.A., 252 N.J. Super. 170, 172 n. 1, 599 A.2d 573 (App.Div. 1991).
[2] We reject county counsel's suggestion that we should now consider Raymond's medical records to the extent that an independent examination by us will support his commitment. The medical records were not marked in evidence at the hearing and were not even referred to by the doctor or the judge.