# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3246-19

IN THE MATTER OF THE
CIVIL COMMITMENT OF
J.A.G.

_____

Argued April 26, 2021 – Decided May 12, 2021

Before Judges Fasciale and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. GLCC-000143-20.[1]

Carol J. Sands, Assistant Deputy Public Defender, argued the cause for appellant J.A.G. (Joseph E. Krakora, Public Defender, attorney; Carol J. Sands, of counsel and on the brief).

PER CURIAM

---

[1] In an August 3, 2020 letter, counsel that appeared in lieu of County Counsel on behalf of the State informed this court that because the subject of the appeal is the same as the motion for reconsideration below, which the State did not oppose, the State is not participating in this appeal and takes no position in this matter.

J.A.G. appeals from a February 25, 2020 order involuntarily committing her (just over an hour before she was administratively discharged) for two weeks, seeking to have the order of involuntary commitment removed from her record. J.A.G. asserts—and it is undisputed on appeal—that the judge violated her due process rights by ordering her involuntary commitment without clear and convincing evidence that she posed a danger to herself, others, or property, improperly shifting the burden of proof onto her, pressing the case for the State, preventing cross-examination of the expert witness, and disregarding expert witness testimony while crediting net opinion. We emphasize this appeal is unopposed. We agree and reverse.

On February 7, 2020, Northbrook Behavioral Health Hospital (NBHN) admitted J.A.G. The next day, the judge entered a temporary order for commitment and scheduled a February 25, 2020 hearing to address the issue of involuntary commitment.

At the February 25, 2020 hearing, counsel for J.A.G. and Dr. Thomas Campo were present, but County Counsel was not. The judge swore Campo in and admitted his expert report into evidence. In his expert report, Campo recommended that J.A.G. be involuntary committed for four weeks. However, at the hearing, counsel for J.A.G. informed the judge that J.A.G. "was under the

A-3246-19

impression that there was a discharge plan that was worked out with the treatment team . . . and there might be discharge relatively soon." The judge asked Campo whether there was a discharge plan put in place. Campo explained that J.A.G. would be discharged to the care of her father.

Counsel for J.A.G. asked Campo whether there was a time frame for discharge. Campo confirmed J.A.G.'s understanding, testifying that she would be discharged in "[t]wenty-eight minutes or so," assuming nothing happened the night before that would jeopardize the discharge plan, such as J.A.G. "throw[ing] a chair or attempt[ing] suicide." The judge then interjected, stating "[w]ell, but [Campo] can do that with any patient at any time." At this point, the judge began questioning Campo regarding J.A.G.'s status prior to admission to NBHN and where she would reside after being discharged. Campo explained that J.A.G.'s "primary issue" was poor self-care. Counsel for J.A.G. attempted to reiterate that J.A.G. believed she was being discharged that day, and as a result counsel did not discuss her post-discharge living situation with her. The judge responded "[w]ell, maybe. There's no report that says that."

The judge issued an order involuntarily committing J.A.G. for two weeks. Counsel for J.A.G. again explained that J.A.G. believed that she would be discharged that same day, to which the judge responded he "would ascribe that

3

to delusional behavior." The hearing concluded at 9:03 a.m. On the same day, at 10:21 a.m., NBHN administratively discharged J.A.G..

In March 2020, J.A.G. filed a motion for reconsideration and included documentation showing NBHN discharged her on the same day of the hearing. After the judge failed to respond to the motion for reconsideration for five weeks, J.A.G. filed this appeal. In April 2020, J.A.G. sent a letter to the judge notifying him that the State was no longer opposing J.A.G.'s motion for reconsideration and asked if he wanted to schedule a hearing on the motion for reconsideration. The judge did not respond.

In May 2020, counsel appearing in lieu of County Counsel on behalf of the State provided a letter stating that the State was not opposing J.A.G.'s motion for reconsideration. As of the filing of J.A.G.'s brief in this matter, there has been no response to the motion for reconsideration.

On appeal, J.A.G. raises the following points for this court's consideration[2]:

---

[2] Although J.A.G. has been discharged and is no longer subject to involuntary commitment, her challenge to the order extending her involuntary commitment is not moot. If the February 25 order is allowed to remain on J.A.G.'s record, it could affect J.A.G.'s status if she were to be committed again. N.J.S.A. 30:4-27.5(b) (requiring that "[i]f a person has been admitted three times . . . at a short-term care facility during the preceding [twelve] months, consideration shall be given to not placing the person in a short-term care facility").

POINT I

THE [JUDGE'S] FAILURE TO PROVIDE A FAIR HEARING, AND ITS ORDER OF INVOLUNTARY COMMITMENT IN DISREGARD OF THE TESTIMONY THAT [J.A.G.] WAS GOING TO BE DISCHARGED WITHIN TWENTY-EIGHT MINUTES OF COURT, CONSTITUTED AN EGREGIOUS VIOLATION OF [J.A.G.'S] CONSTITUTIONAL DUE PROCESS RIGHTS.

POINT II

THE [JUDGE] VIOLATED [J.A.G.'S] PROCEDURAL DUE PROCESS RIGHTS BY CONDUCTING DIRECT EXAMINATION, INTERRUPTING CROSS-EXAMINATION AND ACTING AS OPPOSING COUNSEL IN ITS CONDUCT OF THE CASE.

POINT III

THE [JUDGE] IMPERMISSIBLY SHIFTED THE BURDEN OF PROOF FROM THE STATE TO [J.A.G.], FAILING TO APPLY THE CLEAR AND CONVINCING STANDARD OF PROOF OF MENTAL ILLNESS AND DANGEROUSNESS.

POINT IV

[J.A.G.] MAY SUFFER SERIOUS HARM DUE TO THE [JUDGE'S] IMPROPER RULING.

Our review of a judge's determination to commit an individual is "extremely narrow," In re D.C., 146 N.J. 31, 58 (1996), and it may only be modified where "the record reveals a clear mistake," In re Civil Commitment of

5

R.F., 217 N.J. 152, 175 (2014). A judge's determination should not be disturbed if the judge's findings are "supported by 'sufficient credible evidence present in the record." Ibid. (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

"Involuntary commitment to a mental hospital is state action which deprives the committee of important liberty interests and, as such, triggers significant due process requirements." In re Commitment of Raymond S., 263 N.J. Super. 428, 431 (App. Div. 1993). As a result, our Legislature and Supreme Court have promulgated N.J.S.A. 30:4-27.1 to -27.23 and Rule 4:74-7 "to ensure that no person is involuntarily committed to a psychiatric institution without having been afforded procedural and substantive due process." Ibid. An adult is considered "in need of involuntary treatment" if they are

> an adult with mental illness, whose mental illness causes the person to be dangerous to self or dangerous to others or property and who is unwilling to accept appropriate treatment voluntarily after it has been offered, needs outpatient treatment or inpatient care at a short-term care or psychiatric facility or special psychiatric hospital because other services are not appropriate or available to meet the person's mental health care needs.
>
> [N.J.S.A. 30:4-27.2(m); see R. 4:74-7(f)(1).]

"Mental illness" is defined as "a current, substantial disturbance of thought, mood, perception, or orientation which significantly impairs judgment, capacity

6

to control behavior, or capacity to recognize reality," not including "simple alcohol intoxication, transitory reaction to drug ingestion, organic brain syndrome, or developmental disability" unless that disability results in the impairment. N.J.S.A. 30:4-27.2(r).

A judge may not commit a person to a psychiatric facility "without proof by clear and convincing evidence that the individual has a mental illness, and the mental illness causes the patient to be dangerous to self, to others, or to property." Raymond S., 263 N.J. Super. at 431 (citing N.J.S.A. 30:4-27.9(b); N.J.S.A. 30:4-27.15(a); R. 4:74-7(f)).

If a judge "finds that there is probable cause to believe that [a] person . . . is in need of involuntary commitment to treatment," the judge "shall issue a temporary order authorizing the assignment of the person to an outpatient treatment provider or the admission to or retention of the person in the custody of the facility." N.J.S.A. 30:4-27.10(g); see R. 4:74-7(c). Commitment must be "both appropriate to the person's condition and . . . the least restrictive environment, pending a final hearing." N.J.S.A. 30:4-27.10(g); see R. 4:74-7(c).

Our review of the record leads us to the conclusion that the judge did not afford J.A.G. the due process rights owed to her as guaranteed by our Legislature

and Supreme Court and did not satisfy the procedural requirements of <u>Rule</u> 1:7-4(a).

First, the judge improperly shifted the burden of proof from the State to J.A.G. to show that she was not a danger to herself or others and pressed the case in favor of involuntary commitment. "The case for involuntary commitment must be presented by County Counsel." <u>Raymond S.</u>, 263 N.J. Super. at 432 (citing N.J.S.A. 30:4-27.12). The State bears the burden of establishing that the evidence is so clear and convincing "that the factfinder can 'come to a clear conviction' of the truth without hesitancy." <u>In re Civil Commitment of R.F.</u>, 217 N.J. 152, 173 (2014) (quoting <u>In re Jobes</u>, 108 N.J. 394, 407 (1987)). It is inappropriate for a judge to advance the case for commitment rather than County Counsel because such conduct "places the judge in the role of an adversary rather than of a neutral decision maker." <u>Raymond S.</u>, 263 N.J. Super. at 432.

Here, aside from Campo's expert report, which was contradicted by his hearing testimony, no evidence presented established that J.A.G. was a danger to herself, others, or property. Instead, the judge insinuated that she failed to establish that she should be discharged because "[t]here's no report that says that." The judge also appeared to draw a negative inference against J.A.G. for

A-3246-19

not attending the hearing, explaining to counsel for J.A.G. that she "ha[s] to tell all [her] clients that they should appear in court even if it's for . . . a request from [Conditional Extension Pending Placement]."    See N.J.S.A. 30:4-27.14(b) (noting that a person subject to an involuntary commitment hearing has the right, but not the obligation, to be present at the hearing).  And when counsel for J.A.G. reiterated that J.A.G. believed that she would be discharged the same day as the hearing, the judge stated that he "would ascribe that to delusional behavior." There was no testimony or evidence presented to suggest that J.A.G. was delusional.

The judge also pressed the case for the State.  County counsel was not present at the hearing and did not present a case for J.A.G.'s involuntary commitment.  However, the judge questioned Campo regarding how many times J.A.G. has been hospitalized in the past two years, what her living situation would be, what the "primary issue" was related to J.A.G.'s commitment, what J.A.G.'s level of income was, and whether Campo believed J.A.G. was employable.

Second, the judge prevented counsel for J.A.G. from cross-examining Campo. A patient is guaranteed the right to cross-examine witnesses at a hearing determining whether involuntary commitment is appropriate.  N.J.S.A. 30:4-

27.14(d). Our Supreme Court has noted that "cross-examination is the 'greatest legal engine even invented for the discovery of truth.'" State ex rel J.A., 195 N.J. 324, 342 (2008) (quoting California v. Green, 399 U.S. 149, 158 (1970)). But the judge only permitted counsel for J.A.G. to ask a single question on cross-examination, which elicited that J.A.G. was likely to be discharged in "[t]wenty-eight minutes or so." When counsel for J.A.G. attempted to ask Campo another question, the judge interjected to note that Campo could discharge any patient at any time. From there on, the judge directed questions to Campo and counsel for J.A.G. before ordering J.A.G.'s continued involuntary commitment.

Third, the judge did not place his findings of facts and conclusions of law on the record or in the February 25 order. "In a nonjury civil action, the role of the trial [judge] is to find the facts and state conclusions of law." D.M., 313 N.J. Super. at 454 (citing R. 1:7-4). Whether stated on the record or in a written opinion, "there must be a weighing and evaluation of the evidence to reach whatever may logically flow from the aspects of testimony the [judge] accepts." Slutsky v. Slutsky, 451 N.J. Super. 332, 357 (App. Div. 2017). A judge's failure to state the relevant factual findings and the corresponding legal conclusions "constitutes a disservice to the litigants, the attorneys, and the appellate court."

<u>D.M.</u>, 313 N.J. Super. at 454 (quoting <u>Curtis v. Finneran</u>, 83 N.J. 563, 570 (1980)).

After questioning Campo, the judge simply stated "[a]ll right. . . . I'll do two weeks. Doctor was asking for four," and in the February 25 order, the judge provided no further information aside from the date of the next hearing and the fact that J.A.G. waived her appearance. The judge did not explain what evidence he considered or what portions of Campo's testimony he found credible or incredible, nor did he explain how he reached the conclusion that there existed clear and convincing evidence that J.A.G. was mentally ill and posed a danger to herself, others, or property.

Finally, the judge disregarded Campo's expert testimony and instead presumably credited his net opinion. Evidence demonstrating that a person is subject to commitment "must necessarily come from the testimony of an expert witness." <u>Raymond S.</u>, 263 N.J. Super. at 432. N.J.R.E. 703 requires that an expert's opinion or inference be based on facts or data "perceived by or made known to the expert at or before the proceeding." A judge "must ensure that [a] proffered expert does not offer a mere net opinion." <u>Satec, Inc. v. Hanover Ins. Grp., Inc.</u>, 450 N.J. Super. 319, 330 (App. Div. 2017) (alteration in original) (quoting <u>Pomerantz Paper Corp. v. New Cmty. Corp.</u>, 207 N.J. 344, 372 (2011)).

The net opinion rule "forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." State v. Townsend, 186 N.J. 473, 494 (2006). A conclusion that is "based merely on unfounded speculation and unquantified possibilities" is inadmissible. Townsend v. Pierre, 221 N.J. 36, 55 (2015) (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)).

Campo's expert report recommended that J.A.G. be involuntarily committed for another four weeks. However, Campo's testimony contradicted this report, explaining that J.A.G. would be discharged in "[t]wenty-eight minutes or so." Campo noted that he "ha[d] no idea what [J.A.G.] did last night. She may have thrown a chair or attempted suicide." This statement is "unfounded speculation," as Campo explicitly stated that he did not know what, if anything, occurred the night before, and it would be inappropriate for the judge to rely on such speculation in ordering J.A.G.'s involuntary commitment.[3]

---

[3] In response to counsel for J.A.G. reiterating that J.A.G. believed that she would be discharged on the day of the hearing, the judge stated "[d]octor indicates probably not." Because the judge did not place his findings of fact and conclusions of law on the record, it is unclear whether this statement is based on Campo's speculation as to something that could have happened the previous night, which would have jeopardized J.A.G.'s imminent discharge.

Based on our review of the record, and considering our extremely narrow standard of review, we conclude that the judge made clear mistakes in ordering J.A.G.'s involuntary commitment.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3246-19