# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4441-19

IN THE MATTER OF THE
CIVIL COMMITMENT OF
A.P.

_____

Submitted May 12, 2021 – Decided June 7, 2021

Before Judges Alvarez and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. MRCC-000652-20.

Joseph E. Krakora, Public Defender, attorney for appellant A.P. (Karol Y. Ruiz, Assistant Deputy Public Defender, on the briefs).

John Napolitano, Morris County Counsel, attorney for respondent County of Morris (Staci L. Santucci, First Assistant County Counsel, and Nikki T. Caruso, Special County Counsel, on the brief).

PER CURIAM

A.P. appeals from an August 7, 2020 order of involuntary civil commitment. Although she has been discharged from the hospital, she seeks removal of the involuntary commitment from her record. We affirm.

On August 3, 2020, then sixteen-year-old A.P. was admitted to the child psychiatric unit of St. Clare's Hospital (the Hospital), on a seven-day voluntary parental admission petition submitted by her mother, P.C. The petition stated that A.P. suffered from depression and anxiety.

That same day, counsel emailed the Hospital's Director of Nursing, requesting a copy of A.P.'s medical records. Two days later, counsel received notice that the initial commitment hearing was scheduled for 9:00 a.m. on August 7, 2020. On August 6, 2020, counsel sent another discovery request to the Director of Nursing for A.P.'s medical records, including "the psychiatrist's assessment, biopsychosocial assessment, and progress notes detailing any incident, placement effort, or family team meeting." Later that day, counsel received the Psychiatric Commitment Hearing Report authored by A.P.'s treating psychiatrist, Dr. Jay Shah. At 8:33 a.m. on August 7, 2020, counsel received 142 pages of additional discovery from the Director of Nursing.

The initial commitment hearing was held as scheduled. Prior to the start of the hearing, counsel requested additional time to review the voluminous medical records. The court granted some additional time to review the records but counsel had limited time to do so because she was also representing other minors that day. From the provided discovery, counsel learned that Dr. Shah

A-4441-19

was A.P.'s treating psychiatrist. In her certification, counsel claimed there were "significant differences between A.P. and her mother's reporting of events that led up to her hospitalization" and the version reported in the Hospital's medical records. Additionally, counsel claimed she "did not have time to consult with [her client] as to those differences" or otherwise prepare for the hearing.

A.P. and her mother opposed A.P.'s commitment. P.C. participated by telephone with the assistance of a Spanish interpreter.

During her opening statement, A.P.'s counsel moved to dismiss and for A.P.'s discharge based on the failure to provide timely discovery and failure to present testimony from the treating psychiatrist. The County intended to call Dr. Damien Chiodo, who had not authored the commitment report and was the covering psychiatrist on the day of the hearing.

The judge denied the motion without prejudice and explained that counsel provided no prior notice or certifications concerning the discovery issues. The judge noted that a major storm had recently caused electrical problems throughout the State. He then asked counsel if she wished to adjourn the proceedings to file a written motion to dismiss. Counsel declined the offer to adjourn, and the hearing continued.

A-4441-19

Dr. Chiodo testified that he met A.P. for the first time that morning. A.P. "was admitted for her second hospitalization due to increasing depression, suicidal thoughts, cutting, and auditory hallucinations." A.P. was "diagnosed with major depressive disorder, [which was] recurrent [and] severe with psychotic features." A.P. was prescribed Prozac and Abilify, along with daily psychotherapy. He opined that A.P. still posed a danger to herself based on his conversation with A.P., his review of her medical records, and his discussions with the treatment team. Dr. Chiodo noted, however, that A.P. maintained activities of daily living and remained compliant with her medication regimen within the structure of the unit.

When asked for his recommendation, Dr. Chiodo recommended continued commitment for A.P.'s safety and stabilization. He stated that "as recent[ly] as yesterday," A.P. had reported suicidal thoughts and hallucinations. A.P.'s counsel objected because it was hearsay. The judge sustained the objection but would allow admission of the relevant medical records under the business record exception if the County's counsel could lay a proper foundation.

Dr. Chiodo clarified that A.P.'s medical file contained an August 6, 2020 progress note from Dr. Shah, which reported that A.P. still had suicidal thoughts. A.P.'s counsel objected, arguing that that the business record exception "applies

4

to the admissibility of the record, not to subsequent testimony." The court overruled the objection and allowed "Dr. Chiodo's opinion under [N.J.R.E.] 702 and 703 based upon the fact that it is information that an expert or doctor would rely upon for his opinion." The court also allowed the testimony under N.J.R.E. 803(c)(6). Dr. Shah's progress report was not admitted into evidence.

During cross-examination, Dr. Chiodo testified that he began treating A.P. that morning before the commitment hearing began. He explained that Dr. Shah had been treating A.P. since she was admitted and had prescribed her medication. While he did not diagnose A.P., Dr. Chiodo agreed with Dr. Shah's diagnoses. Dr. Chiodo testified he had reviewed her file and consulted with Dr. Shah and Ashley Merklinghaus, A.P.'s social worker. A.P. was admitted this time due to suicidal thoughts, cutting, auditory hallucinations, and increasing depression. Merklinghaus told him that A.P. injured herself by cutting her thigh.

Dr. Chiodo further testified that he met with A.P. for a psychotherapy session and they discussed her medication. He acknowledged that A.P. had been compliant with medications and that she wanted to continue with the medication and therapy after hospitalization. When asked whether he spoke to A.P.'s mother, Dr. Chiodo stated that he had not spoken to her and explained that it

5

was not necessary or very relevant "because we're continuing the medication and the treatment."

Before excusing Dr. Chiodo, the judge asked him several questions. Dr. Chiodo clarified that he was the covering psychiatrist and reiterated that he personally examined A.P. the morning of the commitment hearing, had reviewed her file, and had spoken to Dr. Shah and Merklinghaus. His meeting with A.P. lasted approximately twenty-five to thirty-five minutes.

Merklinghaus testified that she met with A.P.'s the day after her admission to discuss a discharge plan, which included continuation of treatment with an outpatient psychiatrist and care management services. Merklinghaus acknowledged that A.P. had been cooperative with planning.

On cross-examination, Merklinghaus confirmed that A.P., her mother and father, and her father's girlfriend attended the family meeting. When asked whether she believed A.P. had a supportive family unit, Merklinghaus stated, "I believe everybody wants what's in the best interests for [A.P.]." She noted that A.P.'s discharge papers would provide A.P.'s mother with instructions on how to obtain A.P.'s medication, which would be covered by insurance. She also stated that Caring Partners would assist in securing intensive in-home counseling for A.P.

A-4441-19

A.P.'s counsel then called P.C. to testify. When asked why she took her daughter to the hospital, P.C. stated: "I took my daughter to the hospital to get medication because she didn't have her medication at the time. Not to be admitted. She had an attack for lack of medication. We went to the pharmacy, but it was closed."

P.C. testified that she never saw A.P. cut herself and never reported to the hospital that A.P. cut herself. She also testified that A.P. never reported cutting herself. She told the doctor that A.P. "needed medication" and asked the doctor "whether she could get it." At the family meeting, she told the social worker that she was ready for her daughter to return home. A.P.'s mother expressed concern that A.P. seemed more depressed at the hospital because A.P. did not want to be there—she wanted to go home. A.P.'s mother confirmed that she would take care of her daughter if she were discharged. She noted that she now knew how to obtain A.P.'s medication.

On cross-examination, A.P.'s mother confirmed this was A.P.'s second admission to the Hospital and that A.P. was admitted a month-and-a-half earlier for attempting suicide by overdose. During her first admission, A.P. remained in the Hospital for nine days and was prescribed medication. After A.P. was

A-4441-19

discharged, she received assistance from the treatment team and "[t]here was no need for her to be admitted again."

During cross-examination, counsel made several objections to questions concerning the circumstances behind A.P.'s first admission and cutting. Towards the end, the judge stopped the cross-examination, stating he did not need to hear any further testimony. At that point, the County moved to continue A.P.'s civil commitment. In turn, A.P.'s counsel opposed and argued that the County failed to show clear and convincing evidence that A.P. threatened or attempted to cause serious bodily injury or death.

The judge found that A.P.'s mother was not a credible witness, noting her testimony was not consistent. He rejected her claim "that she brought her daughter to the hospital to secure medication," and found that "all of the other observations were incorrect." The judged commented that she responded differently during cross-examination than she did on direct. He found it inconceivable that she did not know the date A.P. was first admitted.

Relying on Rule 4:74-7(e), the judge accepted Dr. Chiodo's testimony because he reviewed A.P.'s file before testifying and noted that covering psychiatrists regularly testified at commitment hearings. The judge deemed Dr. Chiodo's testimony "highly credible."

8

The judge found that A.P. was admitted on August 3 for depression, anxiety, suicidal thoughts, auditory hallucinations, attempted suicide, and cutting. He noted that Dr. Chiodo's and Merklinghaus's testimony and Dr. Shah's progress reports confirmed the reason for A.P.'s admission.

The judge further found that A.P. was diagnosed with "major depressive disorder, recurrent severe with psychotic features." He noted Dr. Chiodo's recommendation that A.P. remain hospitalized "for her safety and for stabilization." He found A.P. was compliant with medications and "does well in a structured setting, but not when she's not structured."

The judge found by clear and convincing evidence that A.P. suffered from mental illness that caused her to be an imminent danger to herself. He noted that that within the span of two months, A.P. was hospitalized twice. She was admitted the first time for depression and attempting to commit suicide and had cut herself before her second admission. Although her family wanted her to return home and care for her, "they do not recognize her psychiatric illness, nor does [A.P.]." The court continued her commitment and scheduled a review date for August 21, 2020.

While the judge was announcing his decision, P.C.'s telephone connection to the hearing became disconnected. Staff advised the judge that A.P.'s mother

9

would have to call back. Noting his crowded calendar and the lateness of the day, and desiring to complete the case, the judge released the interpreter and continued rendering his oral decision. After commenting that A.P.'s mother "can order the transcript," A.P.'s counsel stated: "I have no objection to Your Honor continuing, because, right, [her mother] can order the transcript and I can certainly fill her in."

A.P. was discharged from the Hospital three days after the hearing. This appeal followed. A.P. raises the following points for our consideration:

POINT I

A.P.'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE TRIAL COURT DENIED HER MOTION TO DISMISS FOR FAILURE TO PRODUCE DISCOVERY IN A TIMELY FASHION PURSUANT TO [RULE] 4:74-7(d).

POINT II

THE TRIAL COURT VIOLATED A.P.'S RIGHTS UNDER N.J.S.A. 30:4-27.13(b) AND [RULE] 4:74-7(e) WHEN IT INVOLUNTARILY COMMITTED HER WITHOUT TESTIMONY FROM HER TREATING PSYCHIATRIST.

POINT III

THE TRIAL COURT VIOLATED A.P.'S RIGHTS UNDER N.J.S.A. 30:4- 27.2(h), N.J.S.A. 30:4-27.2(m), and N.J.S.A. 30:4-27.2(r) WHEN IT COMMITTED HER WITHOUT CLEAR AND CONVINCING

EVIDENCE THAT SHE SUFFERED FROM A CURRENT MENTAL CONDITION THAT CAUSED HER TO BE A DANGER TO SELF OR OTHERS AND FAILED TO CONSIDER APPROPRIATE COMMUNITY TREATMENT THAT SHE WAS WILLING TO ACCEPT.

POINT IV

DISMISSING THE INTERPRETER BEFORE THE CONCLUSION OF THE HEARING VIOLATED A.P.'S RIGHTS TO AN INTERPRETER.

"The scope of appellate review of a commitment determination is extremely narrow." In re Civil Commitment of R.F., 217 N.J. 152, 174 (2014) (quoting In re D.C., 146 N.J. 31, 58 (1996)). "[A]n appellate court should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'" Id. at 175 (quoting D.C., 146 N.J. at 58). The trial court's findings "should not be disturbed" if they are "supported by 'sufficient credible evidence present in the record.'" Ibid. (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

"Involuntary commitment to a mental hospital is state action which deprives the committee of important liberty interests and, as such, triggers significant due process requirements." In re Commitment of Raymond S., 263 N.J. Super. 428, 431 (App. Div. 1993). As a result, our Legislature and Supreme Court have promulgated N.J.S.A. 30:4-27.1 to -27.23 and Rule 4:74-7 "to ensure

11

that no person is involuntarily committed to a psychiatric institution without having been afforded procedural and substantive due process." Ibid. (citations omitted). Rule 4:74-7A(b)(4) provides in relevant part:

> A final order of commitment pursuant to [Rule] 4:74-7(f) may be entered if the court finds that either:
>
> (i) a minor fourteen years of age or older (a) suffers from childhood mental illness, (b) that the childhood mental illness causes the minor to be dangerous to self or others or property as defined by N.J.S.A. 30:4-27.2(h) and -27.2(i) and (c) that the minor is in need of intensive psychiatric treatment that can be provided at a psychiatric facility, special psychiatric hospital, or children's crisis intervention service and which cannot be provided in the home, the community or on an outpatient basis.

In turn, Rule 4:74-7A(a)(2) defines "childhood mental illness" as:

> a current substantial disturbance of thought, mood, perception, or orientation which differs from that which is typical of children of a similar developmental stage, and which significantly impairs judgment, behavior, or capacity to recognize reality when also compared with children of a similar developmental stage. A seizure disorder, developmental disability, organic brain syndrome, physical or sensory handicap, or a brief period or periods of intoxication caused by alcohol or other substances is not sufficient by itself to meet the criteria for childhood mental illness.

A judge may not commit a person to a psychiatric facility "without proof by clear and convincing evidence that the individual has a mental illness, and

12

the mental illness causes the patient to be dangerous to self, to others, or to property." Raymond S., 263 N.J. Super. at 431 (citing N.J.S.A. 30:4-27.9(b); N.J.S.A. 30:4-27.15(a); R. 4:74-7(f)). Clear and convincing evidence "should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." In re Purrazzella, 134 N.J. 228, 240 (1993) (quoting Aiello v. Knoll Golf Club, 64 N.J. Super. 156, 162 (App. Div. 1960)).

The points raised by A.P. do not require extended discussion. A.P. was admitted voluntarily on the petition of her mother. The judge rejected A.P.'s contention that her mother did so just to obtain medication for A.P. The credible evidence demonstrated that A.P. suffered from depression and anxiety with psychotic features. She had recently been admitted after attempting suicide by overdosing. She exhibited cutting on her thigh. Her conditions required medication and psychotherapy. Until stabilized, she was a danger to herself.

The judge's credibility and factual findings are supported by substantial credible evidence in the record. His determination that the County proved by clear and convincing evidence that A.P. had a childhood mental illness that caused her to be a danger to herself was likewise supported by sufficient credible evidence. We discern no error.

A-4441-19

We next discuss the procedural issues raised by A.P. The court conducted the commitment hearing within fourteen days of admission. See R. 4:74-7A(b)(2). Counsel was provided voluminous discovery, albeit shortly before the hearing,[1] and was provided a full opportunity to cross-examine the County's witnesses and to present witnesses on behalf of A.P. We agree that A.P.'s counsel did not receive discovery in a timely fashion. See R. 4:74-7(e) (requiring reports to be made available at least one day before the hearing). However, the judge offered, without objection from the County, to adjourn the hearing to allow time to file a motion to dismiss. Counsel rejected the offer.

"Not every discovery violation results in exclusion of testimony." In re Commitment of G.D., 358 N.J. Super. 310, 315 (App. Div. 2003) (citing Thomas v. Toys "R" Us, Inc., 282 N.J. Super. 569, 581 (App. Div. 1995)). "Sanctions for a discovery violation must be just and reasonable." Ibid. (citing Ratner v. Gen. Motors Corp., 241 N.J. Super. 197, 202-03 (App. Div.1990)). "Whether to impose the ultimate sanction of exclusion is guided by whether there was (1) a design to mislead, (2) surprise, and (3) prejudice if the evidence is admitted." Ibid. (citing Ratner, 241 N.J. Super. at 202). None of those circumstances were

---

[1] The judge noted that a major storm had recently caused widespread electricity problems throughout the State.

present here. We discern no abuse of discretion in denying the motion to dismiss. See id. (finding no abuse of discretion in denying motion to bar expert from testifying based on late service of report).

A.P. also argues it was error to commit her without testimony from her treating psychiatrist. We disagree. Prior to the hearing, Dr. Chiodo reviewed A.P.'s medical records, including Dr. Shah's diagnoses and reports, spoke to Dr. Shah and A.P.'s social worker, and personally examined A.P. The judge correctly determined that Dr. Chiodo was a psychiatrist on A.P.'s treatment team as defined by N.J.S.A. 30:4-27.13(b) and Rule 4:74-7(e). "Other members of the patient's treatment team and any other witness with relevant information offered by the patient or the persons presenting the case for civil commitment shall be permitted to testify at the hearing." N.J.S.A. 30:4-27.13(b). See also R. 4:74-7(e) (same).

N.J.R.E. 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the proceeding. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

15

In addition to personally examining A.P. within five days of the hearing, Dr. Chiodo reasonably relied on A.P.'s medical records and patient chart, and consultations with Dr. Shah and the social worker, all of which were properly considered under N.J.R.E. 703. See also In re Commitment of E.S.T., 371 N.J. Super. 562, 572 (App. Div. 2004) (noting that medical experts may rely upon the opinions of prior treating physicians).

Dr. Chiodo was qualified as an expert in child psychiatry and was competent to testify about A.P.'s mental health history, diagnoses, treatment plan, medication, and the need for continued commitment. Testimony by A.P.'s primary treating psychiatrist, who was unavailable, was not required.

Finally, we do not countenance the judge's decision to render the remainder of his decision without an interpreter participating. By that point, however, the testimony and closing arguments had already concluded. P.C. had participated in the hearing with the aid of an interpreter during the opening statements, motion arguments, testimony, summations, and part of the judge's oral decision. The lack of translation of the remainder of the judge's decision did not alter the outcome. Accordingly, A.P. suffered no prejudice and we discern no reversible error. In addition, A.P.'s counsel had no objection to the judge completing his decision in her absence. "[I]f an issue was not raised below

16

by a party's trial counsel, relief is not warranted unless that party demonstrates plain error by showing on appeal the error was 'clearly capable of producing an unjust result.'" Jacobs v. Jersey Cent. Power & Light Co., 452 N.J. Super. 494, 502 (App. Div. 2017) (citing R. 2:10-2). Because there was no prejudice, we discern no plain error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION