# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3295-23

IN THE MATTER OF THE
EXPUNGEMENT OF THE
CRIMINAL RECORDS OF C.T.[1]

_____

Submitted September 25, 2025 – Decided October 1, 2025

Before Judges Mawla and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. XP-22-002565.

Alfred V. Gellene, attorney for appellant C.T.

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Department of Corrections (Sookie Bae-Park, Assistant Attorney General, of counsel; Kendall J. Collins, Deputy Attorney General, on the brief).

PER CURIAM

    Appellant C.T. appeals from a June 19, 2024 order granting respondent the New Jersey Department of Corrections (DOC) access and the ability to use

---

[1] We use appellant's initials pursuant to Rule 1:38-3(c)(7).

appellant's expunged criminal records in a disciplinary hearing before the Office of Administrative Law (OAL). We affirm.

Appellant was employed by the DOC as a senior corrections officer. On October 30, 2017, she was served with a complaint, arrested, and charged with fourth-degree cruelty and neglect of children, N.J.S.A. 9:6-3, after her child appeared at school with bruised arms. At 5:24 a.m. the following day, appellant requested an unscheduled administrative leave day, but did not inform the DOC of her arrest until 7:10 p.m. that evening.

On November 3, 2017, the DOC filed and served a preliminary notice of disciplinary action (PNDA) on appellant. The PNDA charged her with: conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12); actions involving criminal matters, N.J.A.C. 4A:2-2.7; and forfeiture of employment, N.J.S.A. 2C:51.2. Appellant was immediately suspended, pending a disciplinary hearing held on November 14, 2017. At the hearing, a hearing officer found sufficient evidence to support the charges and suspended appellant without pay.

On June 27, 2018, the criminal charges were dismissed without prejudice and appellant was reinstated to her position on September 28, 2018. On October

2

2, 2018, a grand jury indicted appellant on second-degree abuse and neglect of a child, N.J.S.A. 2C:24-4(a)(2).

As a result of the renewed charges, the DOC issued a new PNDA on January 9, 2019. The new disciplinary charges alleged appellant failed to timely notify the DOC of her arrest as required by the DOC's policies and standards. The DOC immediately suspended appellant.

On June 28, 2019, appellant enrolled in a pretrial intervention program (PTI), and she completed it on May 12, 2022. The indictment was then dismissed. On July 26, 2023, appellant applied for and was granted an expungement of her criminal record pursuant to N.J.S.A. 2C:52-1 to -32.1 (the expungement statute).

The DOC issued a final notice of disciplinary action (FNDA) terminating her employment on December 6, 2023. The FNDA sustained the charges of: conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12); violation of DOC Human Resource Bulletin 84-17 as amended; conduct unbecoming an employee, C-11; and violation of a rule, regulation, policy, procedure, order, or administrative decision, E-1. Appellant challenged the FNDA, and her appeal was transmitted to the OAL as a contested case.

The DOC filed a verified petition in the Law Division for release of appellant's criminal records, pursuant to N.J.S.A. 2C:52-19, for use in the OAL hearing. It argued it needed all the facts from the criminal proceedings because if appellant prevailed on her appeal, she would be returned to work as a corrections officer with the ability to exercise police powers. This constituted both good cause and a compelling need for release of the expunged records, pursuant to N.J.S.A. 2C:52-19. The statute was also satisfied because the records sought were the object of the disciplinary appeal and therefore, the request was tailored to the scope of the issues to be addressed in the appeal.

In opposition, appellant argued granting the DOC's petition would vitiate the purpose of the expungement, which is to treat the expunged matter as if it never happened. Pursuant to In re D.H., the records sought had to be directly related to her job duties. 204 N.J. 7 (2010). She asserted they were not because unproven allegations of abuse or neglect had no connection with her duties as a corrections officer. Appellant also claimed laches barred the DOC's petition because it had the chance to object to the expunged records and did not do so.

On June 19, 2024, the motion judge issued an order granting the DOC's petition. One month later, the judge issued a written opinion amplifying the June order with his reasons for granting the petition.

A-3295-23

The judge found D.H. inapposite because the case concerned "whether a forfeiture order in a civil suit would fall under the scope of an expunged conviction." Instead, the judge focused on the plain language of N.J.S.A. 2C:52-19, which states "upon motion for good cause shown and compelling need based on specific facts . . . [l]eave to inspect [expunged records] shall be granted by the court only in those instances where the subject matter of the records of arrest . . . is the object of litigation or judicial proceedings."

The judge found the DOC's petition met the statutory prerequisites. The DOC demonstrated a compelling need and good cause for the record because it had the burden of proof in disciplinary proceedings, pursuant to N.J.A.C. 4A:2-1.4(a). Given the "considerable authority" possessed by corrections officers, the information sought by the DOC was "vital [so] that any disciplinary action taken against an employee is adjudicated fairly and accurately to preserve the safety of the public." Practically, the judge observed "there is no way [the] DOC can prove its administrative charges . . . without [the] evidence[,] which implicates her expunged charges."

The judge determined appellant's "removal from her position as a corrections officer was clearly a direct result of [the disposition of her criminal matter.]" Her "appeal of that removal commenced the pending administrative

5

hearing at issue. Thus, it is evident . . . that the subject matter of [appellant]'s expunged records is the object of the pending litigation in the OAL."

The judge rejected the laches argument because although the DOC sought the documents well after the expungement proceeding had concluded and could have objected to the expungement itself, these facts were not tantamount to barring a consideration of the expunged records in the disciplinary case. The FNDA and appellant's removal occurred on December 6, 2023. However, "[b]efore her [a]ppeal, there was no litigation pending[,] which would [have] incentivized the DOC to access and save [appellant]'s records, nor reject her application for [e]xpungement."

I.

Rulings on matters of law, including the applicability, validity, or interpretation of statutes, are reviewed de novo. In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020). As a result, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (internal quotation marks omitted)).

We review the denial of equitable remedies for an abuse of discretion. <u>See</u> <u>Sears Mortg. Corp. v. Rose</u>, 134 N.J. 326, 354 (1993). "[A] functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue." <u>Flagg v. Essex Cnty.</u> <u>Prosecutor</u>, 171 N.J. 561, 571 (2002).

## II.

Appellant argues the motion judge erred because the bar to pierce the protections afforded by the expungement statute is high. That bar was not met since the DOC did not demonstrate good cause or a compelling need for the expunged information, as it did not indicate what information was essential to prove the disciplinary charges. Appellant points to <u>D.H.</u> and claims the judge did not adhere to its holding to determine whether the expunged charges touched upon her employment. As a result, the judge's finding that the records sought by the DOC were the object of litigation was erroneous.

Appellant contends the judge ignored the plain language of the expungement statute. If the judge's interpretation is affirmed, every time the factual basis for the expunged charges is at issue in a disciplinary matter, the expunged records could be accessed.

Further, the judge erred when he found appellant's removal was due to her criminal conviction since she was never convicted. The mere event of her arrest was not the basis for her removal.

A.

The expungement statute's "primary objective" is to "provid[e] relief to the reformed offender who has led a life of rectitude and disassociated [themselves] with unlawful activity." N.J.S.A. 2C:52-32. Our Supreme Court has held the statute's provisions "do[] not include the wholesale rewriting of history" and "it does not alter the metaphysical truth of [defendant's] past, nor does it impose a regime of silence on those who know the truth." G.D. v. Kenny, 205 N.J. 275, 294-95, 302 (2011).

When records are expunged, they are not destroyed, but rather isolated so that the records may not be "utilized or referred to for any purpose." N.J.S.A. 2C:52-15(a); see also N.J.S.A. 2C:52-27 ("[T]he arrest, conviction and any proceedings related thereto shall be deemed not to have occurred . . . ."); States Newsroom, Inc. v. City of Jersey City, 261 N.J. 392, 408-09 (2025) (discussing the construction of the expungement statute and its effects). However, the expungement statute, specifically N.J.S.A. 2C:52-19, contains exceptions permitting the disclosure of expunged records.

Our role in statutory construction "is to effectuate legislative intent," with the "best source for . . . legislative intent [being found in] the very language used by the [L]egislature." Gilleran v. Twp. of Bloomfield, 227 N.J. 159, 171-72 (2016). We must "ascribe to the statutory words their ordinary meaning and significance, Lane v. Holderman, 23 N.J. 304, 313 (1957), and read them in context with related provisions so as to give sense to the legislation as a whole, Chasin v. Montclair State Univ., 159 N.J. 418, 426-27 (1999)." DiProspero v. Penn, 183 N.J. 477, 492 (2005). "If the language is clear, the court's job is complete." In re Expungement Application of D.J.B., 216 N.J. 433, 440 (2014).

N.J.S.A. 2C:52-19 sets forth the requirements that must be met before expunged records may be reviewed or inspected on the orders of a trial court, namely, "good cause"; a "compelling need"; and the subject matter of the requested expunged records must be the "object of litigation or judicial proceedings." When those statutory elements are met, then as a matter of law, a court may permit the inspection of expunged records.

Our Supreme Court has held that "good cause" is a "flexible standard" imposed on the party seeking the records. N.J. Div. of Child Prot. & Permanency v. A.P., 258 N.J. 266, 280 (2024). The standard does not have a precise definition or framework, but rather "[i]ts application requires the

exercise of sound discretion in light of the facts and circumstances of the particular case considered in the context of the purposes of the [statute or rule] being applied." Ibid. (alterations in original). "[C]ompelling need based on specific facts" is an elevated standard, which requires a moving party "to explain in detail why categories of . . . information that may be among the expunged records are needed in the pending case." Id. at 280-81.

In A.P., the defendant was charged with child endangerment after his child suffered serious brain injuries. Id. at 273. A grand jury declined to indict A.P. on criminal charges but a Title 9 child and abuse proceeding previously commenced by the New Jersey Division of Child Protection & Permanency (Division) against A.P. was continued. Id. at 273. A.P.'s criminal records were expunged because of the failure to indict, but the Division sought to vacate the expungement and, under N.J.S.A. 2C:52-19, moved to use the records for a limited purpose in the Title 9 proceeding against A.P. Id. at 274-75. The trial court found N.J.S.A. 2C:52-19's standard was met and granted the Division a limited order to review the expunged records in connection with the Title 9 hearing. Id. at 275.

On appeal, our Supreme Court held there was good cause shown for the records because of the "close nexus between [the Division's] investigation . . .

and the . . . Prosecutor's Office's arrest and prosecution of [A.P.]." Id. at 284. Additionally, the Division met its burden regarding the "compelling need based on specific facts" because the only witnesses to the incident were A.P., the child's mother, and the child, who was "incapable of recounting the incident." Ibid. As a result, the "expunged records . . . may provide crucial evidence that cannot be obtained from other sources." Ibid.

The Court also held that a criminal prosecution and a Title 9 proceeding satisfy the expungement statute's "object of litigation or judicial proceeding" requirement because the record reflected that the injuries sustained by the child were the basis for both actions. Id. at 284-85. Therefore, the use of the expunged records in the Title 9 proceeding met the requirements of N.J.S.A. 2C:52-19. Id. at 285.

Here, the DOC clearly established good cause for appellant's expunged records because they relate to the OAL proceeding and form the basis for appellant's termination. As in A.P., where the Division sought the limited use of the records in a Title 9 proceeding, the issue here involves access to expunged records for limited use in factually intertwined litigation proceedings. Id. at 284-85.

Also, like A.P., where the Court found a compelling need because there were limited witnesses to the incident and the records could provide crucial evidence, here the DOC met its burden of showing a compelling need because the disciplinary charge is based on appellant's expunged criminal charges. Id. at 283-84. The expunged records are likely to provide crucial evidence for the DOC to meet its burden of proof in defending the termination decision in the disciplinary appeal. Just as the Division's child abuse and neglect proceeding in A.P. constituted an "object of litigation or judicial proceedings" under N.J.S.A. 2C:52-19, the subject matter of appellant's criminal matter and her pending OAL hearing are the same. Id. at 271.

The motion judge correctly found the elements of N.J.S.A. 2C:52-19 were met. His order granting the DOC access to the expunged records did not misapply the law.

Appellant's argument that D.H. controls lacks merit. D.H. involved a detective, who inappropriately used the Criminal Justice Information System to conduct an unauthorized search of criminal records for a private employer. 204 N.J. at 10. D.H. was charged with a disorderly conduct offense and unauthorized access to a computer. Id. at 11. She entered a plea agreement, which included a mandatory order of forfeiture of public employment. Ibid. Nine years later,

12

D.H. was granted an expungement of her criminal record. Id. at 13. The trial court and we affirmed the forfeiture was a "collateral consequence" to the expungement because it "involved or touched" on her work and therefore, voided the forfeiture order. Id. at 13-15.

Our Supreme Court held that while expungement of D.H.'s conviction was proper, the expungement statute did not require the expungement of a statutorily required forfeiture order. Id. at 24. The Court noted that while D.H.'s conviction "involved and touched" her employment, the forfeiture order was separate from the expungement under N.J.S.A. 2C:52-27, which states the effect of an expungement order is that "[u]nless otherwise provided by law, the arrest, conviction and any proceedings related thereto shall be deemed not to have occurred." D.H., 204 N.J. at 22. The Court held the "[u]nless otherwise provided by law" language provided the basis for exceptions to N.J.S.A. 2C:52-27. Id. at 24 (alteration in original).

The Court harmonized the expungement and forfeiture statutes. It observed the former "allows for 'providing relief to the one-time offender who has led a life of rectitude and disassociated [themself] with unlawful activity,' N.J.S.A. 2C:52-32," while the latter insures "'any person convicted of an offense involving or touching on [their] public office, position or employment shall be

13

forever disqualified from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions[,]' N.J.S.A. 2C:51-2(d)." Id. at 25 (third alteration in original) (emphasis omitted).

D.H. is inapplicable because the issue here is not whether the expungement of a conviction also expunges the record of a collateral consequence of the conviction. The issue in appellant's case is whether a previously expunged record can be used in a subsequent civil proceeding under the expungement statute's exceptions. We conclude it can.

III.

Appellant reiterates the laches argument she made to the motion judge. She contends the DOC had seven years to obtain the records to determine her employment status. Because she completed PTI in May 2022 and the indictment was subsequently dismissed, the case was no longer pending. Therefore, the judge's finding that her disciplinary charges remained pending at the time of the expungement of her record was error. Even so, the DOC had the opportunity to object to her expungement application and knew as early as 2017 that more information would be required but did not act. As a matter of public policy and in the interests of the finality of judgments, the DOC should not be granted access to her expungement records.

14

Laches is an equitable remedy that applies when "a party sleeps on [its] rights to the harm or detriment of others." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 445 (2012). The remedy "is invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." Knorr v. Smeal, 178 N.J. 169, 180-81 (2003). A court must consider the: length of the delay; reasons for the delay; and "changing conditions of either or both parties during the delay." Id. at 181.

As the motion judge noted, laches did not apply because appellant's termination was not finalized until the FNDA was issued on December 6, 2023. Appellant's challenge to the FNDA in January 2024 is what required the DOC to seek the expunged records to adjudicate the disciplinary appeal. The DOC did not sleep on its rights, and given the context, the delay in seeking the expunged records was excusable. And aside from the fact that the records obtained by the DOC may result in an adverse outcome in the disciplinary matter, appellant has not explained how she was prejudiced by the alleged delay in the disclosure of the expunged records.

To the extent we have not addressed arguments raised on appeal, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3295-23